John A. ADAIR, Plaintiff-Respondent,

v.

John Van CLOUD, Defendant-Appellant.

No. 48658.

Supreme Court of Missouri,

Division No. 1.

March 12, 1962.

wrongful death of his wife as the result of an automobile collision. The trial resulted in a verdict for plaintiff in the sum of $25,-000. Defendant has appealed from the ensuing judgment.

Plaintiff and his wife and their friends, Mr. and Mrs. Edward White, all lived in Atchison, Kansas. During the morning of October 9, 1959, these two couples left Atchison en route to Bull Shoals, Arkansas, on a fishing trip. The Whites were riding in their Buick car and the Adairs in their Ford station wagon. They met in Clinton, Missouri, for a late lunch and at that time it was agreed that plaintiff would ride the remainder of the way with Mr. White, and Mrs. White would ride with Mrs. Adair in the station wagon. They continued their journey with the station wagon following the Buick. Mr. White stated that the cars were traveling between 50 and 60 m. p. h. and that he kept the station wagon in his rear-vision mirror at all times. At Springfield they turned east on Highway 60 intending to proceed to Mansfield where they would turn south on Highway No. 5.

The collision here involved occurred near a "T" intersection where County Road "A" goes north from Highway 60 about a mile west of the small town of Diggins. At about that point the highway begins a long sweeping curve to the right. Edward White testified that the casualty occurred about 5:55 p. m.; that it was getting dusk but he had not yet turned on his lights; that defendant's car was approaching at a speed of about 55 m. p. h. in the westbound lane and when it was five or six car lengths away he saw that it was swerving toward his car; that he pulled his car toward the shoulder to avoid being struck by defendant's car, although he couldn't swear that his right wheels were actually on the shoulder when defendant passed; that at this point plaintiff said, "My God, he has hit the girls," and he then looked in the rear-vision mirror and could see the cars in mid-air; that he then applied the brakes and stopped as quickly as possible and they ran back to the scene of the collision. Mr. White

Miller, Fairman, Sanford, Carr & Lowther, by J. Weston Miller, Mayte Boylan Hardie, Springfield, for appellant.

Michael J. Bogutski, Kansas City, for respondent. Stinson, Mag, Thomson, McEvers & Fizzell, Kansas City, of counsel.

HOLMAN, Commissioner.

In this action plaintiff sought to recover damages from defendant for the alleged

further testified that he would estimate that the station wagon was being driven 10 car lengths to the rear of his car; that he heard no horn sounded by anyone; that the time which elapsed between the time he saw defendant's car veer to the south and the time he saw the cars in mid-air was one second.

Following the collision the station wagon came to rest south of the pavement facing north with its back end in the ditch. Defendant's Imperial came to rest in the center of the highway headed south. The paved portion of the highway at that point was 20 feet wide with 9-foot shoulders on each side. The day was clear and the pavement dry. The damage to the station wagon indicated that it had been struck on the left side near the driver's seat. A number of witnesses agreed that most of the debris was in the eastbound traffic lane. The point of collision was fixed by the highway patrolman at 45 feet east of the east edge of Highway "A". As a result of the collision plaintiff's wife was instantly killed and it appeared that Mrs. White was badly injured.

Plaintiff testified that he saw defendant's car veer radically toward the White car and that Mr. White made "violent efforts" to avoid being struck by it; that he then looked back and saw defendant's car hit the station wagon his wife was driving; that it was his best estimate that defendant's car was from three to five feet south of the center line of the highway at the time it struck the station wagon. At that time the station wagon was pointing somewhat towards the right side but he didn't believe any of it was on the shoulder; that it was his best estimate that the station wagon was from seven to eight car lengths behind the Buick at the time in question; that his wife was 43 years of age at the time of her death; that they had been married 17 years and had four sons ranging in age from eight to sixteen years.

Mr. L. C. Silvey testified that he was going east on Highway 60 about four or five car lengths ahead of Mr. White's Buick; that just beyond Road "A" he met a car, and about 100 yards farther east he met a second car; that he then heard a screech of tires and looked in his rear-view mirror and saw that the car he had just met was trying to slow down or stop; that shortly thereafter he looked in his mirror again and saw there had been a collision; that defendant's car was on its side of the road when defendant first began his efforts to stop.

Melvin Engelking stated that he was driving west on Highway 60 and when he reached a point one eighth of a mile east of Highway "A" he noticed the headlights of a car behind him; that when he reached the east driveway of the filling station located on the northeast corner of the intersection he gave a hand signal for a right turn and then "let up on the gas," slowed to about 15 m. p. h and turned right on Highway "A"; that when he had gone about two car lengths to the north he heard a crash and he then stopped his car and went to the scene of the collision. On cross-examination this witness testified that he had his lights on but that his taillight on the right side wasn't working and his brake lights did not come on because he did not apply his brakes before making the turn.

Defendant testified that he was 72 years of age and lived in Springfield; that on the occasion in question he had made a business trip to West Plains and was returning home on Highway 60, driving westwardly at a rate of between 55 and 60 m. p. h.; that as he approached the point of collision he noticed a long line of eastbound traffic; that when he arrived at a point opposite the filling station his headlights disclosed an old black car about 50 feet ahead with no taillights burning; that "when I saw it I immediately applied my brakes, and in doing that, and in trying to stop as suddenly as I did, and to keep from hitting the car in front of me, the rear end of my car veered, turned sharply to my right, and when that happened it threw the front

end of my car directly in the line of traffic that I was meeting." When asked on cross-examination whether he would admit that his car was on the wrong side of the road defendant answered, "Well, I am not positive whether I got—how far it got in the eastbound lane, but, undoubtedly, it was in the eastbound lane."

It was stipulated that the official records disclosed that the sun set on the day in question at 5:45 p. m. Other evidence will be stated in connection with our consideration of the points briefed.

■ Defendant contends that the trial court erred in overruling his motion for a directed verdict at the close of all the evidence because plaintiff's deceased wife was guilty of contributory negligence as a matter of law. In this connection he calls attention to White's testimony to the effect that defendant's car was five or six car lengths away when he first saw it coming toward him, and plaintiff's testimony that the White car was seven or eight car lengths ahead of the station wagon. Defendant further assumes that an average car length is 20 feet. He then reasons that decedent had 240 feet (20′ x 12 car lengths) in which to have turned onto the south shoulder after she reasonably could have seen that defendant was driving into the eastbound lane and thus could have avoided the collision. Defendant places great stress on the fact that White was able to swerve and avoid contact with defendant's car and argues that that fact shows that decedent should easily have also been able to do so in the greater length of time she had in which to act.

In considering defendant's contention that decedent was guilty of contributory negligence as a matter of law, we will view the evidence in the light most favorable to plaintiff. Also, we have in mind that defendant cannot prevail upon this point unless all reasonable minds can draw only one conclusion, namely, that decedent was guilty of negligence in failing to turn her car far enough to the right to avoid defendant's oncoming car. When we view the evidence in the light of the principles stated we are convinced that decedent was not guilty of contributory negligence as a matter of law.

A number of witnesses testified to various distances in terms of car lengths but no witness specifically stated the number of feet in a car length. Defendant's testimony indicates that he considered a car length to be about 10 feet, as he testified that when he saw the Engelking car its distance ahead "was about five or six car lengths, probably 50 feet." There is certainly no testimony to support the assumption of counsel in defendant's brief that an average car length is 20 feet. In the absence of any evidence as to the length of an average car (except the obviously erroneous testimony of defendant) we will assume, for the purpose of discussion, that it is 18 feet.

Of course, the evidence most favorable to plaintiff is Mr. White's testimony that one second elapsed between the time defendant's car first started to veer to the south and the time of collision. If we allow the usual ¾ second for reaction time, decedent had only ¼ second in which to take effective action in avoiding the collision. Also, it may be inferred from defendant's testimony that after the rear of his car skidded to his right the front end moved directly and sharply into the eastbound lane. It happened so quickly that he was not aware of the particular car he had collided with. However, even if we assume that decedent could have seen defendant's car veering to the south when it was 216 feet (12 car lengths) away, she did not have much time in which to act. The combined speed of the two cars was closing the gap between them at the rate of 161 feet per second. Therefore, 121 feet was traversed during decedent's reaction time. This left 95 feet, or %10ths of a second for decedent to turn far enough to the right to avoid defendant's car which had come to the center of the eastbound lane by colli-

sion time. There is evidence to indicate that she had started to turn at the time of the collision. In view of the foregoing, and the other facts and circumstances in evidence favorable to plaintiff, we do not hesitate to rule that decedent was not guilty of contributory negligence as a matter of law. The fact that Mr. White was able to avoid defendant's car when it first started to veer to the south would not necessarily indicate that decedent should have been able to do so after the car had come farther into the eastbound lane.

In support of his contention defendant has principally relied upon the cases of Wininger v. Bennett, Mo.App., 104 S.W. 2d 413; Adkins v. Boss, Mo.Sup., 290 S. W.2d 139, and Major v. Davenport, Mo. App., 306 S.W.2d 626. They are all clearly distinguishable from the case before us upon the factual situation involved. In each of those cases the plaintiff testified to facts indicating that he saw or should have seen the dangerous situation developing in time to have taken action to avoid a collision and failed to do so. In view of that testimony the court was perhaps warranted in holding that those plaintiffs were guilty of contributory negligence as a matter of law, although we note that the Wininger case was sharply criticized in Moore v. Middlewest Freightways, Mo.Sup., 266 S.W.2d 578.

■ In the event we rule, as we have, that Mrs. Adair was not guilty of contributory negligence as a matter of law, the defendant alternatively contends that he was at least entitled to have the issue of her contributory negligence submitted to the jury and therefore the court erred in refusing to give Instruction No. 10 which would have submitted that issue. That instruction submitted decedent's contributory negligence in two respects, i. e., that she could have avoided the collision "by sounding a warning or turning to the side." We need not determine whether there was any substantial evidence which would have support-

ed a submission of decedent's negligence in failing to turn onto the south shoulder. This for the reason that the instruction was erroneous in disjunctively submitting failure to sound a warning and hence the court properly refused the instruction. We have often said that when several assignments are submitted disjunctively, and one of the assignments submitted is erroneous, the instruction is erroneous because the verdict may have been based upon the erroneous submission. Beckwith v. Standard Oil Co., Mo.Sup., 281 S.W.2d 852.

■ In order for the negligence of Mrs. Adair to bar plaintiff's recovery such negligence must have contributed to cause the collision, i. e., it must have been a direct cause of the collision in the absence of which the collision would not have occurred. Under the evidence in this case the failure of decedent to sound a warning could not possibly have been a proximate cause of the collision. Defendant testified that he had seen the line of approaching traffic. The collision occurred when defendant tried to stop his car suddenly in order to avoid hitting the car ahead of him and in so doing lost control of the movement of his car with the result that it was thrown into or veered into the station wagon in the eastbound lane. It is a fair inference from defendant's testimony that after the rear end of his car skidded around to the north he was doing everything in his power to keep his car in the westbound traffic lane and thus to have avoided going into the line of approaching traffic. Under those circumstances a warning from decedent would have accomplished nothing. It would have given defendant no knowledge he did not already have. In no way could it have caused defendant to avoid the collision. Since there was no evidence to support a finding of causal connection the submission of the instant assignment of contributory negligence would have been error and, as stated, the court properly refused the instruction. Buehler v. Festus Mercantile Co., 343 Mo. 139, 119 S.W.2d

961 [5]; Fann v. Farmer, Mo.App., 289 S.W.2d 144 [10].

■ The next point briefed is that the court erred in giving Instruction No. 1 at the request of plaintiff because it was "a misdirection of law and confusing, misleading and prejudicial in the case because it improperly defined the highest degree of care required of the defendant." It reads as follows: "The court instructs the jury that 'negligence' as used in these instructions with reference to the defendant means the failure, if any, to use the highest degree of care. 'Highest degree of care' as used in these instructions means the highest practicable degree of. care which a very prudent person would use under the same or similar facts and circumstances as shown in the evidence."

We will not rule this point on the merits because we have concluded that it has not been preserved for appellate review. Defendant made only a general objection to this instruction at the trial. Civil Rule 79.03, V.A.M.R., provides, in part, as follows: "If any specific objections to instruction have not been made at the trial before submission to the jury, then such specific allegations of error in instructions must be set forth in the motion for new trial to preserve the error for review." In his motion for new trial defendant complained of Instruction No. 1 in the following manner: "(a) Instruction No. 1 given by the court at the request of plaintiff is an abstract statement of law. (b) Instruction No. 1 given by the court at the request of the plaintiff, and particularly the first paragraph thereof, gave the jury roving commission to find negligence on the part of the defendant. (c) Instruction No. 1, particularly when taken in connection with Instruction No. 2, gave the jury a roving commission without limitation and without the issues to find negligence on the part of the defendant and such instruction taken in connection with Instruction No. 2 went beyond the pleadings in this cause."

(Instruction No. 2 was plaintiff's main verdict-directing instruction which submitted defendant's negligence in driving onto the left half of the roadway.)

■ As indicated, the point briefed by defendant in this court is that the instruction was erroneous because it improperly defined the highest degree of care. More specifically, the brief recites that it required of defendant "not only that he exercise the care which a very prudent person would use under the same or similar facts but further required an extra degree of care, that is, the highest practicable degree of care which a very prudent person would use." The defendant did not include this specific objection in his motion for a new trial and hence the point is not preserved for our review. Sullivan v. Hanley, Mo. App., 347 S.W.2d 710.

■ The final point briefed by defendant is that the trial court erred in failing to grant him a new trial because of the cumulative prejudicial effect of the efforts of plaintiff's counsel in seeking, in a number of instances, to inject improper evidence into the trial. The first incident occurred during plaintiff's examination of the highway patrolman, as follows: "Q. Did you make any arrests? A. Yes, sir. Mr. Miller: Just a minute: if Your Honor please, they know that is a highly improper thing to inquire into, and we ask that counsel be reprimanded even to inquire into it—and he knows better—and that has no part in this case. The Court: Objection will be sustained. Mr. Bogutski: I beg your pardon, Your Honor. I will apologize to Mr. Miller. I am sorry." It will be noted that the objection was made after the witness had answered and it was sustained. Defendant did not move to strike but did ask that plaintiff's counsel be reprimanded. The court did not err in failing to reprimand counsel. Such matters are discretionary and in this case a reprimand was obviously unnecessary because plaintiff's attorney, in effect, confessed his error and

apologized in the presence of the jury for having asked the question.

The next incident occurred during the cross-examination of defendant, as follows: "Q. (by Mr. Bogutski): Mr. Cloud, were you convicted of careless and reckless driving by the Magistrate Court of Webster County, Missouri, as a result of a charge brought against you in this accident, in this collision? Mr. Miller: We object to that for the reason that counsel knows that he wasn't convicted—The Court: Objection will be sustained. Mr. Miller:—and I ask that counsel be reprimanded for again bringing it up, when he was not convicted. And he knows that it would be an improper way to prove it, if he was." It will be noted that the court sustained the objection and the question was not answered. The court did not reprimand plaintiff's counsel but in a discussion outside the presence of the jury counsel indicated his good faith in asking the question by pointing out that defendant had been arrested and had forfeited his appearance bond and that under the provisions of Section 302.010(4) RSMo 1959, V.A.M.S., a forfeiture of bail is equivalent to a conviction. Under the circumstances we rule that the failure of the court to reprimand plaintiff's attorney was not prejudicial error.

The final complaint under this point is stated in the brief as follows: "Defendant also urges that he was prejudiced by the testimony of plaintiff's witness White with respect to the emotional relationship of plaintiff and his deceased wife and plaintiff's testimony with respect to their love and his loneliness, and to his lack of any immediate family in the vicinity of his home, because such testimony was irrelevant to any issues in the case and was calculated only to appeal to the prejudices, sympathies and passions of the jury." We have searched the testimony of Mr. White and do not find any testimony concerning the emotional relationship between plaintiff and his deceased wife. In regard to plaintiff's reference to his loneliness and the fact that he and his deceased wife had no relatives in the vicinity of Atchison (to assist in rearing his children) the court sustained defendant's objection in each instance and directed the jury to disregard the testimony. We deem that action sufficient to erase any prejudicial effect that might otherwise have resulted from the testimony. Pender v. Foeste, Mo.Sup., 329 S.W.2d 656. Plaintiff was permitted to testify that he and his wife loved each other. We need not determine the admissibility of that testimony because, in any event, no prejudicial error resulted as the jury was clearly instructed that plaintiff was only entitled to recover his pecuniary loss on account of the death of his wife and could not recover for his grief or mental anguish. Moreover, it will be noted that defendant has not complained of the instructions on damages, nor does he contend that the verdict was excessive.

Considered either separately or collectively the matters complained of under this point did not constitute prejudicial error.

The judgment is affirmed.

COIL and HOUSER, CC., concur.

PER CURIAM.

The foregoing opinion by HOLMAN, C., is adopted as the opinion of the court.

All concur.