Arthur R. HANFF, Appellant,

v.

ST. LOUIS PUBLIC SERVICE COMPANY, a Corporation, John W. Fletcher, McNamara Motor Express, Inc., a Corporation, and Vincent Palazzolo, Respondents.

No. 48417.

Supreme Court of Missouri,

Division No. 2.

April 9, 1962.

John L. Rooney, Rooney, Webbe & Davidson, St. Louis, William L. Mason, Jr., St. Louis, for appellant.

Donald L. Schmidt, St. Louis, for respondents St. Louis Public Service Co. and John W. Fletcher.

C. M. Kirkham, Moser, Marsalek, Carpenter, Cleary, Jaeckel & Hamilton, St. Louis, for respondents McNamara Motor Express, Inc. and Vincent Palazzolo.

BOHLING, Commissioner.

Arthur Hanff sued the St. Louis Public Service Company, a corporation sometimes designated as Service Company, and John W. Fletcher, and McNamara Motor Express, Inc., a corporation sometimes designated as Express Company, and Vincent Palazzolo for $40,000 damages for personal injuries sustained while a passenger on one of Service Company's streetcars operated by defendant Fletcher in a collision with the trailer of a tractor-trailer unit of the Express Company operated on a mission for it by defendant Palazzolo. The court sustained the motion of defendants Express Company and Palazzolo for a directed verdict at the close of plaintiff's case. Plaintiff submitted his case against defendants Service Company and Fletcher under the res ipsa loquitur theory. There was a verdict and judgment for said defendants. Plaintiff on this appeal contends the court erred in sustaining said motion for a directed verdict and in giving instructions on behalf of defendants Service Company and Fletcher.

The collision occurred on Olive, some distance west of its intersection with Leffingwell, streets in the City of St. Louis, about 9:30 a. m., September 21, 1959, "a real nice day," as the streetcar was passing the tractor-trailer unit. Plaintiff contends a case was made against the Express Company and Palazzolo on the theory Palazzolo swerved the tractor to the right and caused the left rear end of the trailer to move to the left and collide with the streetcar where

its widest point began back of the front end as it was passing the trailer.

Plaintiff called defendants Palazzolo and Fletcher and Officer Samuel Loduca as his witnesses.

Olive Street has three lanes for traffic each way; a curb lane, a middle lane, and the streetcar tracks. From about 170 feet west of Leffingwell there is a slight downgrade to Leffingwell. A safety zone, estimated by defendant Fletcher to extend about 100 feet west of Leffingwell, is at the center of the street, marked by painted lines and by buttons.

Palazzolo, John Carter also in the cab, was southbound on Ewing, a "two-way" street a block west of Leffingwell, and saw the streetcar about two blocks to the west while stopped at Olive Street. He turned left to go east on Olive.

The streetcar was 44 or 46 feet long. Its windshield was approximately 6 feet wide, and the car tapered outwardly to a width of 9 feet at the rear of the front door, 6 or 7 feet behind the front end. Its overhang was estimated at 24 inches.

The trailer was estimated to be 40 feet long, 6 or 8 feet wide, and the overall length of the unit to be 50 feet. The outsides of the tires are even with the sides of the trailer. The tractor extends underneath the trailer.

Palazzolo proceeded eastwardly in the middle lane in low gear, pulling a 20,000 pound load, and parallel with and about 11 inches south of the track. He did not remember getting onto the track, but if he did he gradually got back to the south. The tractor cab seat is high. He could see, over the cars ahead, the electric traffic signal to his right change to red and stopped back of some automobiles, a short distance west of the safety zone, with the rear end of the trailer closer to the track than its front end.

Defendant Fletcher testified the tractor-trailer's speed was 3 or 4 miles an hour and the streetcar's was 6 or 7 m. p. h., and that when the streetcar was 10 or 15 feet behind the trailer the two vehicles were still moving at the same speeds, with the tractor-trailer parallel with the track. Fletcher estimated the streetcar had 3 or 4 inches to clear the tractor-trailer. He "accelerated" the speed of the streetcar a little and started to pass the tractor-trailer unit.

The left rear end of the trailer and widest part of the streetcar collided as the streetcar was passing the trailer. The damage to the streetcar commenced where its widest point began, a glancing blow on the rear of the front door jam, extending back and becoming deeper for about 5 feet or so.

Fletcher testified that after the collision the streetcar traveled 14 or 15 feet, and stopped with its front end 12 or 14 feet past the rear of the trailer; that the tractor-trailer traveled 4 or 5 feet; that the front of the tractor was then about 20 feet west and the front of the streetcar was about 57 feet west of the safety zone; and that the left rear end of the trailer was about 2 or 3 inches south of the streetcar. He estimated that the left front corner of the trailer was about 4 feet south and the left front of the tractor was about 7 or 8 feet south of the track.

There was no probative evidence that Fletcher sounded the bell or warned of the streetcar's approach.

Defendant Fletcher testified on direct examination: "The front end of the streetcar got past and then I heard a noise, and I looked and the tractor had pulled to the right." He then testified in answer to a double question whether the tractor had turned to the right, south, and then part of the streetcar door and the left rear of the trailer collided: "That's correct." On cross-examination by his counsel he testified that the tractor-trailer pulled to the right after he started to pass and "in just a few seconds" the collision occurred. He testified the truck was not moved toward the track.

Palazzolo testified he did not turn his unit in any direction; that he had been at a dead stop from the time the traffic light changed from amber to red until it was changing to green just about when the collision occurred.

■ Plaintiff had the burden of establishing that Palazzolo was negligent in swerving the tractor to the right or south and that such negligence proximately contributed to the collision and plaintiff's injuries. Ledkins v. Missouri-Kansas-Texas Rd. Co., Mo., 316 S.W.2d 564, 568 [5].

Plaintiff cites two cases, Burnett v. St. Louis Pub. Serv. Co., Mo., 337 S.W.2d 921, 923 [2], and Highfill v. Brown, Mo., 320 S.W.2d 493, 495. The Burnett case is cited on the theory that plaintiff "can call the drivers of both vehicles in his case, and thereby make a case against either or both, though their evidence conflict, so long as he seeks to go on no theory developed from such evidence which conflicts with his own personal testimony and fundamental theory." Defendant does not question this. The Highfill case is cited on the theory that "if the driver of a vehicle causes it to move to the left just as another vehicle is passing him on the left, there is a jury question of his negligence." That case went to trial upon plaintiff's claim and defendant's counterclaim, and involved a left turn across the highway by defendant's car, the first in a line of three, and a collision with plaintiff's car while in the act of passing said line of cars. These cases do not establish negligence on the part of Palazzolo under the facts disclosed by this record.

Plaintiff, on direct examination, testified he did not know what caused the collision. But, on cross-examination by counsel for these defendants, he testified: "Q Do you remember telling the doctor at the hospital, or telling any one at the hospital when you were admitted to the hospital that you were riding a streetcar which ran into the rear of a stopped truck? A That's right, sir.

That's how come it happened. That's what I seen."

■ We think under the record before us that the evidence with respect to the tractor moving to the right or south did not remove from speculation and conjecture that such movement caused the left rear end of the trailer to swerve and resulted in the widest part of the streetcar striking the left rear end of the trailer. The distance the tractor traveled and the angle with the trailer in which it moved would have a bearing and effect on whether the left rear end of the trailer would move north beyond the line of travel of the tractor-trailer unit. Plaintiff did not establish by substantial testimony what effect the swerving of the tractor to the south had upon the left rear end of the trailer. The noise directed Fletcher's attention to the situation. He did not see the trailer move to the north.

Plaintiff states Officer Loduca's measurements showed that after the collision the front of the tractor-trailer was 5½ feet north of the south curb of Olive and the rear 8 feet north of said curb. The officer so stated; but when he was questioned about his diagram he testified that the measurement showed the right front corner of the tractor-trailer was 15 feet 5 inches north of the south curb of Olive. His testimony shows that after the collision the tractor-trailer was approximately parallel with the track, and was off in its 50 feet of length only 2½ feet from being parallel with the track. This does not make plaintiff's case. There was traffic in the curb lane at the time of collision.

At one place Fletcher testified this 3 or 4 inch clearance was between the front of the streetcar and the rear of the trailer; and one would not have that clearance at the rear of the streetcar's front door: "Q So it was less than 3 or 4 inches back there that you had room to spare, wasn't it? A Yes, sir. Q In fact, there just wasn't room, was there? A Well, there wasn't room to clear." He stated later he misunderstood these inquiries of counsel.

Plaintiff in his brief argues that it is a commonly known fact and judicial notice should be taken that when the tractor of a tractor-trailer unit "is swung to the right, the left rear of the tractor [plaintiff means trailer] swings to the left." We think not. Plaintiff, in attacking one of the Service Company's instructions, states in his motion for new trial that there was no competent and believable evidence that "a turn of the tractor-trailer to the right did cause or could cause the said vehicle to swing to the left; all evidence to this effect being contrary to the law of physics known to the court and of which the court should take judicial notice."

Plaintiff has not established error in the direction of a verdict for defendants Express Company and Palazzolo.

Plaintiff testified he was seated by the window in the third seat from the front door of the streetcar, on the right hand or door side. Mrs. Juanita Graw, a passenger on the streetcar at the time and a witness for the Service Company and Fletcher, testified that she and a Mrs. Marcus occupied the third cross seat from the front of the streetcar on the right hand side; that two ladies were in the seat ahead of her, and that there was no man in the first cross seat.

Plaintiff stated that when the collision occurred he went forward and backward and felt his back snap; that he was not thrown from his seat and his hat was not thrown off; that he did not remember but his hand may have struck the seat ahead. The police took him to the City Hospital. He had a serious backache. He testified to two previous injuries to his back, but had recovered from them. Mrs. Marie Lewis, a witness for the Service Company and Fletcher, testified she was a nurse and housekeeper at the home where plaintiff was staying at the time of the collision; that plaintiff "was laid up," "wasn't able to work," "complained quite a bit," before and up to the time of the collision; that plaintiff wasn't a very good worker.

Plaintiff contends for the first time in his brief here that instruction No. 2 was erroneous in submitting "ordinary care" as the standard for defendants Service Company and Fletcher because they were under a duty to use the highest degree of care to transport him safely. Defendants say the instruction was not erroneous when considered as a whole and, furthermore, plaintiff's point is not for review under Civil Rule 79.03, V.A.M.R., providing, so far as material: "If any specific objections to instruction have not been made at the trial before submission to the jury, then such specific allegations of error in instructions must be set forth in the motion for new trial to preserve the error for review." Plaintiff's said objection was not presented to the trial court at the trial or in plaintiff's motion for new trial and has not been preserved for reveiw. Adair v. Cloud, Mo., 354 S.W.2d 866; and Overton v. Tesson, Mo., 355 S.W.2d 909 (cases handed down March 12, 1962); Sullivan v. Hanley, Mo. App., 347 S.W.2d 710 [1]. See also Rule 70.02.

Plaintiff attacks instructions Nos. 4 and 5, which were alike except that the first related to defendant Fletcher and the other to defendant Service Company. The first paragraph of each informed the jury that the burden of proof was on the plaintiff. Plaintiff's main complaint attacks the italicized portion of the second paragraph of the instruction, reading:

"You should not find that the defendant John Fletcher was negligent *from the mere fact of the occurrence* shown by the plaintiff's evidence, if you find and believe from all the credible evidence in the case that said defendant was not negligent, and if you so find and believe from the credible evidence in the case that said defendant was not negligent, then your verdict should be in favor of the defendant John Fletcher."

Plaintiff's verdict directing instruction, so far as material here, required findings by

the jury "that a collision occurred between the said streetcar and a tractor-trailer at the time and place shown to you in the evidence; and * * * that Arthur R. Hanff sustained injuries to his person as a direct result of the said collision; then you are instructed that such facts (if you believe them to be true) are sufficient evidence to warrant a finding by you that the defendants John W. Fletcher and St. Louis Public Service Company were negligent, and you may so find, unless you find and believe from other facts and circumstances in evidence (if any) that the *occurrence* was not due to the said defendants' negligence * * *."

Instructions informing the jury "that the mere fact" mentioned in the instruction is "no evidence whatever that defendant was in fact negligent," differ from instructions Nos. 4 and 5. Citizens Bank of Festus v. Missouri Natural Gas Co., Mo., 314 S.W.2d 709, 714 [3], 72 A.L.R.2d 855 ("that there was a fire" in premises owned by plaintiff and that plaintiff had brought suit); Paige v. Missouri Pac. R. Co., Mo., 323 S.W.2d 753, 759 [9] ("that plaintiff was injured and has brought suit claiming that defendants were negligent"). Grote v. Reed, Mo., 345 S.W.2d 96, 99 [1–3], reviews a number of the cases.

■ Harke v. Haase, 335 Mo. 1104, 75 S.W.2d 1001, 1004, and other cases approve the following from Sweeney v. Erving, 228 U.S. 233, 240, 33 S.Ct. 416, 418, 57 L.Ed. 815, Ann.Cas.1914D, 905: "* * * [R]es ipsa loquitur means that the facts of the occurrence warrant the inference of negligence, not that they compel such an inference; that they furnish circumstantial evidence of negligence where direct evidence of it may be lacking, but it is evidence to be weighed, not necessarily to be accepted as sufficient; that they call for explanation or rebuttal, not necessarily that they require it; that they make a case to be decided by the jury, not that they forestall the verdict." The facts of a res ipsa case do not compel the inference of negligence. Liebow v. Jones Store Co.,

Mo., 303 S.W.2d 660, 662 [1, 2]; Turner v. Missouri-Kansas-Texas R. Co., 346 Mo. 28, 142 S.W.2d 455, 460 [9, 10], 129 A.L.R. 829; Duncan v. St. Louis Pub. Serv. Co., 355 Mo. 733, 197 S.W.2d 964, 966.

Instructions Nos. 4 and 5 are in words approved in Harke v. Haase, supra, and other cases. See Stephens v. St. Louis Pub. Serv. Co., Mo., 276 S.W.2d 138, 142 [5].

■ Plaintiff's witnesses defendants Fletcher and Palazzolo testified to the facts involved in the collision of the streetcar and the trailer. Direct testimony established plaintiff's injuries. The nature and extent of his injuries did not further explain the occurrence or afford additional circumstances supporting the inference of negligence. The word "occurrence" in plaintiff's instruction and in defendants' instructions had the same meaning. A defendants' verdict would be proper upon a finding from all the evidence "that the occurrence was not due to the said defendants' negligence." The recent case of Goldblatt v. St. Louis Pub. Serv. Co., Mo., 351 S.W.2d 773, after a review of the authorities, is in accord. Plaintiff's contention is overruled.

■ Plaintiff also contends that the giving of instructions Nos. 4 and 5 overemphasized that plaintiff had the burden of proof, citing Miller v. Williams, Mo., 76 S.W.2d 355, 357 [7] and Tinsley v. Massman Const. Co., Mo., 270 S.W.2d 835, 841. The trial court upon objection at the close of the evidence indicated both instructions would not be given but, as plaintiff states, whether inadvertently or not, the record shows both were given. The Miller case did not rule that two instructions on the burden of proof constituted reversible error. See West v. St. Louis Pub. Serv. Co., 361 Mo. 740, 236 S.W.2d 308, 311 [3, 4]. Repetition, without more, in instructions is generally considered not reversible error and to rest in the discretion of the trial court. West and Tinsley cases, supra; Leathers v. Sikeston Coca-Cola Bottling Co., Mo.App., 286 S.W.2d 393, 397 [7, 8]. The trial court

overruled plaintiff's motion for new trial in which he renewed this objection; and we find no manifest abuse of its discretion in such ruling.

Instruction 10, purporting to be a falsus in uno, falsus in omnibus instruction, concluded as follows: " * * * if you believe that any witness has knowingly sworn falsely to any fact or facts material to the issues in this case, then you *may* reject such portion of the testimony as you believe to be false, if any, and you may reject all other portions of such witness's testimony." Plaintiff says the word italicized above permitted the jury, notwithstanding they might have believed defendant Fletcher (plaintiff's witness) knowingly gave false testimony, to nevertheless believe such testimony to the prejudice of plaintiff. Plaintiff cites Fitzpatrick v. St. Louis-San Francisco R. Co., Mo., 327 S.W. 2d 801, 807, 808, 80 A.L.R.2d 825, which was concerned with courtroom misconduct calculated to create sympathy and prejudice. It contained no ruling involving nondirection or misdirection in an instruction, and does not establish the error presented. Plaintiff's contention appears ruled against him in Rossomanno v. Laclede Cab Co., Mo., 328 S.W.2d 677, 680 [2–6], citing cases and stating in part: "A so-called falsus in uno, falsus in omnibus instruction which merely authorizes the jurors to disregard testimony which they believe to be false are useless declarations of the obvious, but they are not prejudicially erroneous." In overruling plaintiff's motion for new trial the trial court approved the instruction as not prejudicially erroneous. West v. St. Louis Pub. Serv. Co., Mo., supra, 361 Mo. 740, 236 S.W.2d 308, 313 [13]. We find no occasion to interfere.

Defendants say, with respect to each point in plaintiff's brief not hereinbefore developed, that the issue sought to be raised in his brief was not presented to the trial court at the trial or in his motion for new trial. Plaintiff has filed no reply brief, has not answered these contentions of defendants, and our examination of the record with respect to the matters involved, which relate to the instructions, sustains defendants' position. We are of the view they present no manifestly prejudicial error materially affecting the merits of the action. In these circumstances what we have said hereinbefore with respect to instruction No. 2 is applicable.

The judgment is affirmed.

BARRETT and STOCKARD, CC., concur.

PER CURIAM.

The foregoing opinion by BOHLING, C., is adopted as the opinion of the court.

All of the Judges concur.