Charlene STANZIALE, Appellant,

v.

Robert E. MUSICK, Respondent.

No. 48855.

Supreme Court of Missouri,

Division No. 1.

July 8, 1963.

Rehearing Denied Sept. 9, 1963.

claimed to have been sustained in a rear-end collision on Meyer Boulevard in Kansas City, Missouri, about 7 P.M. on July 21, 1958, plaintiff appeals from the judgment entered upon the unanimous jury verdict for defendant at the conclusion of the trial on January 21, 1961.

Plaintiff, a married woman then thirty-three years of age, was one of a group of six ladies en route to the Starlight Theater in a 1954 Ford sedan then being driven by Mrs. Ed Kelly. Plaintiff was riding on the right side of the front seat, and Mrs. Rosemary Weilert, then six and one-half months pregnant, was riding in the middle of the front seat. Mrs. Kelly, headed east on Meyer Boulevard, brought her automobile to a stop just west of Oak Street in obedience to an automatic traffic control light at the intersection of Meyer and Oak. "A few seconds" later, the rear end of the standing Kelly Ford was struck by the front end of defendant's 1950 Buick sedan also headed east on Meyer. Defendant, accompanied by his wife and three minor children, was on the way home at the close of his day's work at an A & P market.

As defendant left the market, it "just started to mist rain, a light mist," and that continued during the brief period of about five minutes to the time of accident. Traveling east on Meyer at twenty to twenty-five miles per hour, defendant observed the Kelly automobile, eastbound in front of him, stop at the intersection; and, at a point estimated to have been fifty to sixty feet behind the Kelly automobile, defendant applied the brakes on his automobile. When he did so, "the wheels locked and started sliding so I (defendant) immediately released them and applied them again and I did that two or three times and every time I applied them it would slow me down but it wouldn't stop." By witness Wessling, a sergeant in the traffic safety bureau of the Kansas City police department with fifteen years' experience in accident investigation, defendant adduced evidence without objection

Kaer P. Vanice, II, Kirchner & Vanice, Kansas City, for appellant.

Hale Houts, J. D. James, Edwin W. Rooker, Houts, James, Randall, Hogsett & McCanse, Kansas City, for respondent.

STONE, Special Judge.

In this jury-tried action for damages in the sum of $50,000 for personal injuries

that a mist or light rain forms a "scummy surface" on paved roadways, making them "extremely slick" for vehicular traffic and creating "a deceptive condition" for drivers without adequate knowledge and realization of the unique and unusual danger inherent in such situation; that, by reason of its oil base, "asphaltic concrete," such as that on Meyer, becomes "particularly slick as compared to * * * concrete"; and that such unusually hazardous condition continues until it has rained long enough and hard enough to wash off the streets. Defendant testified that, prior to application of the brakes, he was not aware of the particularly slick condition of the roadway. "I didn't know the streets were slick"—"I had never had it just like that before."

■ In any event, the front end of defendant's Buick admittedly struck the rear end of the standing Kelly Ford. However, the evidence favorable to the verdict, the benefit of which must be accorded to defendant-appellee on this appellate review [see cases collected in West's Missouri Digest under Appeal and Error, ☞930 (1)], was to the effect that the Buick had been traveling only three to five miles per hour at the time of collision, that it had stopped at the point of impact, that the Ford had moved forward "just about six inches," and that neither automobile had been damaged.

Immediately after the accident, plaintiff and Mrs. Kelly, the driver, alighted from the Ford, and defendant and his wife got out of the Buick. Defendant's wife walked forward to the Kelly Ford and "asked the group, as a whole," whether anyone had been injured. Borrowing plaintiff's language, "everybody said no excepting myself and I never answered." When asked upon cross-examination why she had remained silent if (as she had testified) her head had been jerked and she had suffered a sharp pain in her neck— "it felt like a hot knife stuck right here (indicating)," plaintiff said "I didn't think

there was any sense in making a statement there"—"I stood there, everybody else was talking so why should I be lipping?" The parties re-entered their respective vehicles without even exchanging names and addresses, and Mrs. Kelly started forward. But, at plaintiff's suggestion, Mrs. Kelly stopped, alighted from her automobile a second time, walked back to defendant's automobile, and obtained his name and address. Plaintiff's suggestion was prompted (so she said upon trial) by the fact that Mrs. Weilert, riding in the middle of the front seat of the Kelly Ford, was pregnant. We note parenthetically that Mrs. Weilert, called as a witness for plaintiff, testified that she had suffered no ill effects as a result of the accident. With her companions, plaintiff proceeded to the outdoor theater and sat through the performance, interrupted by a shower. She voiced her first complaint, that of a headache, when the group stopped at a drive-in on the way home.

Plaintiff was employed as assistant librarian at the research center of Spencer Chemical Company in Merriam, Kansas. Following the accident on the evening of Monday, July 21, 1958, she continued at her regular work through Friday, August 8, 1958, excepting for the loss of one-half day on Monday, July 28, and the entire day on Tuesday, July 29. Her first medical consultation was on Friday, August 1, with Dr. John L. Barnard, an orthopedic surgeon. In the detailed history then taken by Dr. Barnard (the accuracy of which was, upon trial, disputed by plaintiff but confirmed by the doctor), it was recorded, in part, that: "Patient gives a history of occasional back trouble for some time. * * * Her present difficulty in the upper back started about two weeks ago without any particular known cause. * * * Four nights ago patient was riding in the right front seat of a car which was struck from behind by another car, and following this the pain became more severe." It may be proper at this point to observe that plaintiff's cause

of action was pleaded, tried and submitted on the theory that the rear-end collision of July 21, 1958, had been the sole and direct cause of her alleged injuries, and *not* on the theory that a pre-existing condition had been aggravated by that collision.

At the time of Dr. Barnard's initial examination on August 1, 1958, plaintiff stated (according to the doctor's office records) that "there are three areas of discomfort in the back—in the upper back and across the shoulders, in the middle of the back, and at the end of her spine," that she had taken chiropractic treatments for her lower back, but that she had "no particular complaint of the low back at the present time." X rays disclosed no evidence of bone injury; and, although plaintiff had various subjective complaints, "the only objective sign of any injury * * * was a little bit of spasm in the right side of the back." His diagnosis was myositis (inflammation) of the posterior cervical muscles and right trapezius." He advised, and plaintiff took, physical therapy treatments periodically until October 20, 1958. When plaintiff complained of more severe pain in both shoulders and the back of her head on August 8 (one week after initial examination), Dr. Barnard fitted her with a plastic cervical collar which she wore until October 27, 1958. She returned to work on Tuesday, December 9, "took a day's vacation on the 10th," and then worked regularly until January 28, 1959, when she slipped on ice and fractured a bone in her left foot. She did not work for Spencer thereafter and her employment was terminated "pretty much by mutual agreement" on February 6, 1959.

In the meantime, she had consulted Dr. A. D. Murray, a chiropractor, on December 5, 1958, had told him that she had sustained "a whiplash injury to the neck" in the rear-end accident of July 21, 1958, and had taken a series of eleven chiropractic adjustments terminating on January 16, 1959, which, according to Dr. Murray's written report in evidence, had resulted in "abatement of all symptoms being effected"

excepting only "a residual, though diminished, burning sensation in the left arm." She also had returned to Dr. Barnard on January 5, 1959; and, in response to her complaints then altogether subjective, he had resumed physical therapy treatments, which continued intermittently until March 6, 1959. On April 3, 1959, Dr. Barnard advised plaintiff "to settle her case" and dismissed her from treatment.

Plaintiff thereafter had no medical attention or chiropractic adjustments prior to September 25, 1959, on which date an automobile driven by her was struck on the driver's side by another automobile with sufficient force to inflict damage of $335.09 upon plaintiff's automobile. Three days later, to wit, on September 28, 1959, plaintiff returned to Dr. Murray, the chiropractor. In his written report "made to someone at the request of the plaintiff" and here in evidence without objection, it was shown that plaintiff had told him that the collision of September 25, 1959, had caused "my neck to be snapped back and forth causing pain," and that the chiropractor had diagnosed her condition as "whiplash strain of cervical musculature and ligamentous tissue with subluxation" of several vertebrae and had stated that the accident of September 25, 1959, was the "sole cause" of her subsequent disability. A series of twenty-eight chiropractic adjustments followed before (according to Dr. Murray's report) plaintiff's disability ended on "approximately Nov. 30, 1959."

While driving her automobile, plaintiff was involved in other accidents on February 3 and 22, 1960. In the accident of February 3, 1960, plaintiff slackened speed and the driver of the following vehicle ran into the rear end of plaintiff's automobile. When cross-examined about this accident, plaintiff first said that the impact was "very slight," that she then had sustained "no injury of any kind," and that, so far as she knew, no damage had resulted. However, in the office records of Dr. Murray, the chiropractor, in evidence without objection, it was recited that plaintiff "was

hit from behind again on Feb. 3 by a car going approx. 15 mph." And although, when initially asked whether she had made a claim for injuries alleged to have resulted from the accident of February 3, 1960, plaintiff answered unequivocally, "no, sir, I haven't," further cross-examination soon established to the contrary and elicited grudging admissions that, in conversations with an insurance adjuster (subsequently identified as one Jerry Bowman), plaintiff had stated in substance that she expected a settlement payment on account of the accident of February 3, but would not discuss figures until her doctor had released her. At trial time in January 1961, this yet had not come to pass. Plaintiff was still "going" to Dr. Murray after having taken forty chiropractic treatments in 1960 and three in January 1961.

The accident of February 22, 1960, occurred as plaintiff was "easing down" an incline. The manner in which the accident happened is undisclosed and unimportant. According to plaintiff, "the tail fin" of her automobile came into contact with the side of the other vehicle but the impact was "practically none." She made no claim for personal injuries on account of that accident but "I (plaintiff) wanted my car repaired because I felt that he was as much responsible as I was."

On January 16, 1961 (only two days before the trial began), plaintiff returned to Dr. Barnard, the orthopedic surgeon, for an examination. Her principal complaints at that time (still subjective as they had been when Dr. Barnard had examined her on January 5, 1959) were "a burning sensation in her left arm" and "numbness in the middle and ring fingers on the left hand." At the trial, plaintiff described the "burning sensation" as "the feeling of a hot iron setting on my arm" and asserted that she had experienced the same feeling since the accident of July 21, 1958, out of which this suit arose. When pressed on cross-examination to state whether she also "blamed" the other driver involved in the accident of September 25, 1959, for the

"burning sensation" in her arm, plaintiff first said that she did but then fell back on "I don't know." And when asked whether she had told adjuster Bowman that the accident of February 3, 1960, had caused her arm trouble, she responded with an emphatic denial—"at no time did I make a statement like that"—and a vigorous affirmation that "I said * * * it (the burning sensation) had been there before and had never stopped." But Bowman, called to the stand by defendant, testified just as positively that, when plaintiff first claimed during "the latter part of March (1960) * * * that she was having some repercussion from this accident" of February 3, 1960, she told him of a "tingling or burning sensation" in her arm which she attributed to the accident of February 3, 1960, and did not reveal as having been present prior thereto.

■ The first point in plaintiff's brief is that "the court erred in not finding the verdict was against the weight of the evidence." Under the plain and unambiguous provisions of Rule 83.05, subds. (a) (3) and (e), this point presents nothing for review. (All references to rules are to our Rules of Civil Procedure, V.A.M.R.) Marlo Coil Corp. v. Grand Park Corp., Mo.App., 348 S.W.2d 610. Furthermore, an appellate assignment that the verdict is against the weight of the evidence refers to a matter which is essentially for the trial court. Robbins v. Robbins, Mo., 328 S.W.2d 552, 556 [7]; Meyers v. Smith, Mo.App., 349 S.W.2d 412, 415 [8]; Gould v. M. F. A. Mutual Ins. Co., Mo.App., 331 S.W.2d 663, 670–671 [13, 14].

■ Plaintiff's second and third points are that "the court erred in not holding verdict was against the law and that verdict is a mistake under the law and the evidence" and that "the court erred in overruling plaintiff's motion for new trial because said verdict was the result of prejudice, passion, failure of the jury to recognize the negligence of defendant and his failure of proof of legal defense, and was a mistake of the jury under the law and the evidence."

These generalized charges, which are submitted with no particularization either in the points themselves or in the argument section of plaintiff's brief, are meaningless abstractions not even in colorable compliance with the requirements of Rule 83.05 and raise nothing for appellate review. Edmisten v. Dousette, Mo.App., 334 S.W.2d 746, 750, and cases cited in footnote 2. Moreover, the language of these points and the holdings in the cases cited thereunder (in several of which the appellate court affirmed the action of the trial court in granting a new trial on the weight of the evidence) indicate that the quoted complaints are but ill-disguised variations of the same misplaced effort reflected by the first point, namely, to seek a new trial here on the weight of the evidence.

■ In another point, plaintiff complains that "the court erred in not sustaining plaintiff's motion for new trial because defendant had negligently collided with the automobile in which plaintiff was riding contrary to the rear end doctrine." Defendant construes this to be a contention by plaintiff that she was entitled to recover as a matter of law; and, with no portion of the argument section of plaintiff's brief identified or identifiable as relating to this point and defendant's construction not challenged in a reply brief or upon oral argument, we similarly interpret the quoted language. However, plaintiff offered no motion for a directed verdict [Rule 72.01] and sought no peremptory instruction; but, on the contrary, plaintiff treated as issues for determination by the jury, and submitted by her instruction 1, (a) whether defendant had been negligent and (b) whether "such negligence if any directly caused" plaintiff's injury. In these circumstances, plaintiff did not preserve for appellate review, and is precluded from urging here, the contention that she was entitled to recover as a matter of law. Rule 83.13(a); Heideman v. Lorenz, Mo., 349 S.W.2d 230 [1]; Robbins v. Robbins, supra, 328 S.W.2d 555 [1]; Arnold v. Fisher, Mo.App., 359 S.W.2d 602, 606-607 [1]; Warren v. Weaver, Mo.

App., 343 S.W.2d 682, 684–685 [3]. Although the foregoing is dispositive of this point, it may not be inappropriate to add that, if this point were to be ruled on its merits, we would be impelled to deny it. Schaefer v. Accardi, Mo., 315 S.W.2d 230, 232–233 [1–7]; Beezley v. Spiva, Mo., 313 S.W.2d 691, 695–696 [6–8].

■ Three of plaintiff's points relate to the introduction of evidence. In one of these, plaintiff says that "the court erred in permitting defendant to introduce prior lawsuit and interrogate plaintiff regarding same." This refers to a suit instituted by the same plaintiff, represented by the same attorneys, in the Circuit Court of Jackson County on August 18, 1953, in which plaintiff sought damages from her landlord for alleged *permanent* injury to her *left hand* when it was scalded by hot water and steam from a radiator in the apartment house where she then lived. We recollect in passing that "a burning sensation in her *left arm*" and "numbness in the middle and ring fingers on the *left hand*" were plaintiff's principal complaints upon trial of the instant case, in which she again sought damages for permanent injury. However, we need not and do not rule this point on its merits for the reason that plaintiff's counsel interposed no objection whatever to the propriety of detailed cross-examination of his client concerning the 1953 suit. Quite to the contrary, when defendant offered in evidence the original petition in the 1953 suit plaintiff's counsel said: "We admit this. We filed it and we settled it." And we read six pages of cross-examination on this subject before we find the first objection (if such it may be termed) by plaintiff's counsel: "Don't interrupt her (plaintiff). Let her answer the question you just asked her." With consideration of this point neither invoked nor justified under Rule 79.04, plaintiff may not have appellate review of the testimony pertaining to the 1953 suit. Hopper v. Conrow, Mo., 347 S.W.2d 896, 902 [6]; Faught v. Washam, Mo., 329 S.W.2d 588, 599 [17].

Another assignment is that "the court erred in overruling plaintiff's motion for new trial because the defendant was permitted to offer evidence plaintiff received compensation and accident and health benefits from her employer, a collateral source purchased by plaintiff wholly independent of wrongdoer contribution or employment." There was no showing that plaintiff had received either workmen's compensation or accident benefits. However, there was evidence (first developed in cross-examination of plaintiff) that Spencer Chemical Company, plaintiff's employer at the time of accident, had a *noncontributory sick leave plan* which provided "after one year of employment sick leave of twelve weeks full pay and ten weeks at sixty per cent of full pay for any one ailment"; that plaintiff was not eligible for benefits under this plan until she had worked past August 5, 1958 (the first anniversary of her employment by Spencer), which was fifteen days after the accident of July 21, 1958; and that plaintiff worked through August 8, 1958, and thereafter drew, under the sick leave plan, twelve weeks at full pay and about five weeks at sixty per cent before she returned to work on December 9, 1958. The quoted point apparently was directed at this evidence, although benefits under the sick leave plan certainly were *not* (as the point charges) from a source either "purchased by plaintiff" or "wholly independent of * * * employment."

As we have noted, the history taken by Dr. Barnard (a medical doctor of plaintiff's choice) on *August 1, 1958*, included the patient's then statements that she had had *"occasional back trouble for some time"* and that *"her present difficulty in the upper back started about two weeks ago without any particular known cause."* When plaintiff laid off work on Friday, *August 8, 1958* (the third day after she had become eligible for benefits under the sick leave plan), she asked Dr. Barnard to report to Spencer, and the doctor did so report on *August 11, 1958*. Plaintiff's counsel, employed in the meantime, sought and obtained a written medical report from Dr. Barnard under date of *September 26, 1958*, in which report the doctor included the above-quoted statements from the history initially given by plaintiff on August 1, 1958. During a visit to Dr. Barnard's office on *October 11, 1958*, plaintiff changed her history, so the doctor testified and his office records showed, in this wise: "The patient now gives the history of having been in a car wreck on July 21, 1958. She had had no discomfort in her neck prior to the accident. * * *"

■ Under this point, plaintiff cites and relies upon the general rule thus stated in 25 C.J.S. Damages § 99, p. 647: "The wrongdoer is not entitled to have the damages to which he is liable reduced by proving that plaintiff has received or will receive compensation or indemnity for the loss from a collateral source, wholly independent of him"—a principle which, as plaintiff points out, has found recognition and application in the reported cases in this jurisdiction. Siemes v. Englehart, Mo.App., 346 S.W.2d 560, 563–564 [1]; Joshmer v. Fred Weber Contractors, Inc., Mo.App., 294 S.W.2d 576, 586 [16]; Burens v. Wolfe Wear-U-Well Corp., 236 Mo.App. 892, 158 S.W.2d 175, 178–179 [5]. See also Kickham v. Carter, Mo., 335 S.W.2d 83, 89–90 [3–5]; Baker v. Fortney, Mo.App., 299 S.W.2d 563 [1]; Wells v. Thomas W. Garland, Inc., Mo.App., 39 S.W.2d 409, 411–412 [7, 8]. But defendant's position has been and is that the evidence under attack was *not* offered for the purpose or on the theory of mitigation of damages, but rather as bearing upon plaintiff's credibility and as relevant upon the basic and bitterly-contested factual issue whether plaintiff's physical condition (whatever it may have been) was caused solely and directly by the rear-end accident of July 21, 1958. And, in this connection, defendant argues that plaintiff's initial purpose was to lay the foundation for a claim for *sick leave* benefits and to obtain Dr. Barnard's support therefor; that the claim against instant defendant hatched from an afterthought; and that, for the same alleged disability, plaintiff drew *sick leave*

benefits from her employer on the theory that such disability *was not traumatic* in origin and in this suit seeks damages from defendant on the contrary theory that such disability *was traumatic* in origin.

"The ultimate purpose of any trial upon an issue of fact is the ascertainment of truth—the accurate determination of the actual facts in the controversy" [Bartlett v. Kansas City Public Service Co., 349 Mo. 13, 16, 160 S.W.2d 740, 742, 142 A.L.R. 666], and one of the most effective and valued means provided in this judicial search for the truth is the right of cross-examination. Hungate v. Hudson, 353 Mo. 944, 185 S.W. 2d 646, 649 [6], 157 A.L.R. 598; Kearns v. Sparks, Mo.App., 260 S.W.2d 353, 360 [16]. So it is said in civil cases that, although the trial court is invested with a substantial measure of discretion as to the scope and extent of permitted cross-examination (Hilton v. Thompson, 360 Mo. 177, 227 S.W.2d 675, 682 [15]; Orr v. Shell Oil Co., 352 Mo. 288, 177 S.W.2d 608, 615 [26]), wide latitude should be accorded in cross-examination, particularly of an adverse party who offers himself (or herself) as a witness (Maul v. Filimon, Mo.App., 315 S.W.2d 859, 866 [8]; Houfburg v. Kansas City Stock Yards Co. of Maine, Mo., 283 S.W.2d 539, 548–549 [21]), and that, generally speaking, anything having a legitimate tendency to test or shed light on the accurary, veracity or credibility of an adverse witness or party may be shown on cross-examination. Roberts v. Emerson Electric Mfg. Co., Mo., 362 S.W.2d 579, 584 [7]; Merk v. St. Louis Public Service Co., Mo., 299 S.W.2d 446, 449; Farmer v. Kansas City Public Service Co., Mo.App., 186 S.W.2d 766, 769 [4]; Massman v. Muehlebach, 231 Mo.App. 72, 95 S.W.2d 808, 813 [6].

■ We are satisfied that, in the particular and peculiar circumstances of this case, the evidence of which plaintiff complains in the point under discussion (in brief, that plaintiff applied for and drew *sick leave* benefits from August 10 to December 8, 1958) did bear upon plaintiff's credibility and was relevant upon the issue raised by plaintiff's claim (and defendant's denial thereof) that the accident of July 21, 1958, had been the sole and direct cause of her alleged disability. Jackson v. Thompson, 358 Mo. 1001, 218 S.W.2d 97, 98 [1]. Such evidence being relevant and material for those purposes, that it would have been inadmissible in mitigation of damages did not require its exclusion. Louis Steinbaum Real Estate Co. v. Maltz, Mo., 247 S.W.2d 652, 656 [8], 31 A.L.R.2d 1052; In re Jamison's Estate, Mo., 202 S.W.2d 879, 884 [9]. Plaintiff's counsel properly might have requested an instruction limiting the purposes for which this evidence should have been considered (Martin v. Mercantile Trust Co., Mo., 293 S.W.2d 319, 329 [14]); but, although the court specifically stated that an appropriate limiting instruction would be given if presented, no such instruction was offered. Cf. Grimm v. Gargis, Mo., 303 S. W.2d 43, 51, 74 A.L.R.2d 599; Brown v. Kroger Co., Mo.App., 358 S.W.2d 429, 434 [7]. The trial court did not err in admitting the evidence under consideration.

■ The third evidence point complains of the testimony of Jerry Bowman, the insurance adjuster, concerning his conversations and negotiations with plaintiff for settlement of her claim following the accident of *February 3, 1960.* But, before Bowman was called as a witness for defendant, essentially the same facts (to which Bowman subsequently testified) already had been developed and presented, *without interposition of a single objection or motion to strike by plaintiff's counsel,* in the course of searching cross-examination of plaintiff which (in respect of this subject matter) covers six pages of the transcript. Plaintiff should not be heard to complain of Bowman's testimony, where substantially the same facts theretofore had been received in evidence *without objection.* State ex rel. State Highway Commission v. Warner, Mo.App., 361 S.W.2d 159, 164 [7], and cases collected in footnote 3.

■ If we were to treat of this point on its merits, we would be impelled to rule it

against plaintiff. For, with plaintiff upon trial attributing the "burning sensation" in her left arm to the accident of *July 21, 1958*, and seeking damages from instant defendant therefor, evidence that, in discussions and negotiations with Bowman, plaintiff had attributed the same condition to the accident of *February 3, 1960*, was admissible for two reasons, namely, (1) because it bore upon plaintiff's credibility and (2) because, with plaintiff seeking to recover in this suit for *permanent* injury and disability alleged to have resulted from the accident of *July 21, 1958*, and conceding that she also had unsettled claims for injury and disability alleged to have resulted from the accident of *February 3, 1960* (and from the accident of *September 25, 1959*), the jury would have been charged (in the event of a finding for plaintiff on the issue of liability) with the further duty of determining what portion of plaintiff's alleged injury and disability was the result of, and thus allocable to, each of the accidents and, in that delicate and difficult determination, would have needed and would have been entitled to have had all available competent evidence which would have shed light upon that vexing problem. Turner v. Yellow Cab Co. of Springfield, Mo.App., 361 S.W.2d 149, 154–155 [2–4], and cases there cited.

Plaintiff next asserts that defendant's instructions 4 and 7 were erroneous because they failed to hypothesize the "facts in evidence * * * essential for the jury to find for defendant." With no particularization of the "essential" facts (either in the point itself or in the argument section of the brief), this point presents nothing for our consideration. Sides v. Contemporary Homes, Inc., Mo.App., 311 S.W.2d 117, 121–122 [10]; Catanzaro v. Duzer, Mo.App., 329 S.W.2d 257, 261 [7]; Anderson v. Welty, Mo.App., 334 S.W.2d 132, 139 [13], and cases cited in footnote 10. Furthermore, no specific objection to any instruction having been made either before submission to the jury or in the motion for new trial, the alleged error in instructions 4 and 7 was not preserved for appellate review anyway. Rules 70.02 and 79.03; Hanff v. St. Louis Public Service Co., Mo., 355 S.W.2d 922, 926 [4]; O'Brien v. City of St. Louis, Mo., 355 S.W.2d 904, 908 [8]; Adair v. Cloud, Mo., 354 S.W.2d 866, 871 [5]; Hartz v. Heimos, Mo., 352 S.W.2d 596, 602 [5].

This brings us to the final point which assigns error "because of prejudicial and inflammatory argument." The questioned argument dealt, generally speaking, with the evidence concerning plaintiff's 1953 suit, her sick leave benefits paid by Spencer from August 10 to December 8, 1958, and her claims for alleged personal injuries by reason of the accidents of September 25, 1959, and February 3, 1960; and the obvious and overriding purpose of the argument was to demonstrate plaintiff's want of credibility. We do not extend this opinion by detailing the assailed argument, for at the time plaintiff's counsel offered no objection of any character. Under the general rule that, when counsel do not object to allegedly improper argument at the time it is made, they will not be heard to object on appeal, nothing pertaining to the argument in this case has been preserved and presented for appellate review. Davis v. Illinois Terminal R. Co., Mo., 326 S.W.2d 78, 86 [8]; Enyart v. Santa Fe Trail Transp. Co., Mo., 241 S.W.2d 268, 270–271 [4]. Consideration of this point is neither invoked nor justified under Rule 79.04; but, if we were reviewing the argument under that rule permitting reversal and remand for "(p)lain errors affecting substantial rights * * * when the court deems that manifest injustice or miscarriage of justice has resulted therefrom," we could find no reversible error. Cf. Kelly v. Terminal R. Ass'n. of St. Louis, Mo., 315 S.W.2d 699, 704 [5]; Birmingham v. Coen, Mo., 320 S.W.2d 509, 510 [2, 3]; Fisher v. Williams, Mo., 327 S.W.2d 256, 263–264 [11–13].

The judgment for defendant should be and is affirmed.

All concur.