Maggie STOCKER (Plaintiff), Respondent,

v.

J. C. PENNEY COMPANY, a Corporation, et al., Defendants,

J. C. Penney Company, a Corporation (Defendant), Appellant.

No. 30454.

St. Louis Court of Appeals.

Missouri.

Sept. 20, 1960.

Motion for Rehearing or to Transfer to Supreme Court Denied Oct. 19, 1960.

Hocker, Goodwin & MacGreevy, J. M. Goodwin and William J. Hormberg, St. Louis, for appellant.

Gregg Wm. Keegan, St. Louis, for respondent.

ANDERSON, Judge.

This is an action for damages for personal injuries sustained by plaintiff when she fell while descending a stairway in a store operated by J. C. Penney Company. The action was brought against J. C. Penney Company, Ralph Miller, the Store Manager, and Wayne Johnson, a Floor Manager in said store. At the close of plaintiff's case, plaintiff dismissed the action as against defendant Johnson. At the close of all the evidence the Court overruled motions for a directed verdict submitted by the two remaining defendants. The Court in submitting the case to the jury gave, at plaintiff's request, a verdict-directing instruction as against defendant J. C. Penney Company, but none as against defendant Miller. No verdict form instruction was given as to defendant Miller. The jury returned a verdict in favor of plaintiff and against defendant J. C. Penney Company in the amount of $3,000. The date of this verdict was May 28, 1959. No verdict was returned either for or against defendant Miller. On August 24, 1959, plaintiff dismissed the case as to defendant Miller. On August 28, 1959, the Court overruled the motion for new trial filed by J. C. Penney Company. On September 3, 1959, defendant J. C. Penney filed in the circuit court its notice of appeal from the judgment entered on the verdict.

Plaintiff's fall occurred on November 26, 1957, at about 12:30 P.M. She had entered the store at about 10:30 A.M. after which she looked around the first floor, then started down the stairway to the basement to look at drapes. The stairway was divided by a banister with room enough on each side for two people to pass one another. Plaintiff proceeded down the steps on the left side of the banister. On the way down she observed something on the third step from the top. This something was black and about the size of a plum. This black object was on the left part of the step and about two inches from the edge thereof. Plaintiff did not step near this black object, but stepped around it. She then proceeded down the stairway to the basement where she shopped for drapes, but did not buy any. Thereafter plaintiff returned to the first floor. In doing so she used the same stairway, except she ascended the steps opposite the ones she had used in going to the basement. She testified that by then she had forgotten about the large dark spot she had observed previously. After arriving on the first floor plaintiff tried on several dresses, bought a slip and a pair of hose. These articles were put into a sack which she placed in her purse. After making these purchases plaintiff decided to again go to

the basement to buy drapes. She started down the left side of the stairway. She did not hold on to the banister, but walked down the left side of the steps. She testified that at the time she was not thinking of the spot she had seen previously, stating that it had "just slipped my mind". When she reached the third step from the top something caught her foot causing her to lose her balance and to fall forward down the steps. She fell all the way down to a landing near the bottom of the stairway. It was the heel of her shoe that was caught. After she had fallen, and while lying at the bottom of the steps, plaintiff felt something "sticky" on the heel of her shoe which looked like gum. At another place in her testimony she testified that after the fall when she was at the bottom of the stairs, "I had some gum on my shoe. * * * on the left foot." She stated she was sure that what she stepped in on the third step was what she had previously seen on the same step. Plaintiff further testified that Mrs. Winter, an employee of the store, thereafter picked up something in the area that looked like gum.

Plaintiff further testified that after she fell Mr. Johnson, the Floor Manager, came to her assistance. He helped her up from the floor and assisted her to a chair. Plaintiff testified that Mr. Johnson said "Someone get that off before someone else falls." Thereafter a man came upon the scene and plaintiff heard a scraping sound. Afterwards, while being helped up the stairs by Mr. Johnson, plaintiff observed that the step in question had been scraped. The scraped area was about the size of a half dollar. Plaintiff testified that from the first time she went down the steps until she fell, a period of an hour and a half or two hours elapsed.

Anna M. Winter, an employee, who worked in the basement of the store, was called as a witness by the plaintiff. She testified that while waiting upon a customer she heard a noise, looked up and saw plaintiff sitting on the second step from the bottom of the stairway. The witness went immediately to where plaintiff was, and upon arriving there observed some gum on the step upon which plaintiff was sitting. It was close to the edge of the step. Mrs. Winter did not pick up the gum. After Mrs. Winter's arrival at the scene another person came to plaintiff's assistance and Mrs. Winter went back to work. This other person then went to get Mr. Johnson, the Floor Manager. Mrs. Winter did not see anyone pick up the gum, nor did she see Mr. Govro, the maintenance man, do any work in that area. The gum was gone when she went to dinner which was between one thirty and two thirty. She never at any time noticed any marks at the top of the stairs in the vicinity of the second or third step which indicated that the linoleum thereon had been rubbed or scraped off leaving a black mark.

Wayne Johnson, Floor Manager of the basement, was also called as a witness for the plaintiff. He testified that when he arrived on the scene, Mrs. Stocker was seated in a chair at the foot of the stairway. He did not remember the manner in which he was called; whether someone came for him or whether he was summoned by the bell system which was maintained in the store. However, he was sure it was someone connected with J. C. Penney Co. who notified him of the accident. He was in his office at the time. When he got to where Mrs. Stocker was, there was someone else present, but he did not know who it was. He did not remember seeing Mrs. Winter there at the time. He did not know who procured the chair for Mrs. Stocker. He stated that it was his duty, if he saw anything on the floor, to have it cleaned up immediately. Defendant maintains a system of bells for summoning someone to perform that task. Ordinarily the cleaning up process can be performed in a matter of a few minutes. The witness stated he did not remember making an inspection of the stairway after plaintiff fell. He further stated that defendant employs a maintenance man who has charge of the floors, and who normally cleans the floors every morning.

He further stated that in reality the cleaning of the floors was a continuous process. Johnson further testified that he was never informed of the fact that plaintiff had fallen over a piece of gum. He never saw any gum on the steps or in any place around it. He did not recall the word "gum" being mentioned, nor did he remember plaintiff saying she had fallen down the steps. He talked to Mrs. Winter that day but did not recall she mentioned anything about gum being there. The steps in question are covered with light tan-colored linoleum. Johnson stated he did not remember seeing any maintenance man in the area after plaintiff's fall, and did not believe the store manager came to the scene of the accident. Plaintiff at the time complained about her ankle and was rubbing it. He did not recall seeing any gum in the area, and stated that if there had been any he would have recalled such fact. He further testified that defendant employs a maintenance man named Govro who is on the premises throughout the day, and who was in the building between ten o'clock and twelve o'clock the day in question. Govro, if summoned, could have cleaned the step in a matter of minutes. Johnson further testified that it was a part of his duties to see that the floor is in good condition, and to summon Govro if he should see anything on the floor. There was not to his knowledge any person summoned to scrape away anything while he was present with plaintiff after her fall. He stated that during November there would probably be five or six hundred people in and out of the store each day. Mr. Johnson took plaintiff to the Lutheran Hospital where she received treatment for her injuries.

Ralph Miller, Manager of the store, was called as a witness by the plaintiff. He testified he was not summoned to the scene of the accident, and knew nothing of it until he signed an accident report which he presumed was the day after the occurrence. He stated it was Mr. Johnson's job to make the report, and a part of his duties in making it was to talk to any employee who had seen anything in order to ascertain what the latter had observed. There were 35 employees at the Penney store at the time of plaintiff's accident. These employees were under a duty to report anything they saw on the floor so that it might be cleaned up. Mr. Govro was the maintenance man at the time of the accident. His job consisted of cleaning the floors every day before store hours, and to keep the store clean. This entailed constant cleaning. Govro had no assistant. The floor space of the store was approximately 9,000 square feet for the basement and 8,000 square feet for the upper floor. Miller further testified that at no time did he ever observe any linoleum scraped from the top of the second or third step of stairway.

No question is raised on this appeal as to the nature or extent of plaintiff's injuries, or that the verdict is excessive, hence it is unnecessary to detail the evidence with reference thereto.

Appellant's first point is that plaintiff failed to make a submissible case for the reason that it was not shown that defendant had either actual or constructive knowledge of the dangerous condition which was the cause of plaintiff's injury. In our judgment there is no merit to this contention. The evidence showed that plaintiff observed a dark spot about the size of a plum on the third step of the stairway on her first trip to the basement. About one hour and a half or two hours later, while descending the same stairway, something on the third step caught plaintiff's foot, causing her to lose her balance and fall forward down the stairway. After her fall plaintiff felt something "sticky" on her left shoe which looked like gum. Mrs. Winter, who reached the scene of the accident immediately after plaintiff's fall, observed gum on the step on which plaintiff was sitting. Plaintiff testified that she was sure that what she had stepped on was what she had previously seen on her first trip down the stairway earlier that morning. There were thirty-five employees in the store under a duty to report anything they saw on the floor so

that it could be removed. A maintenance man, Mr. Govro, was employed to keep the premises clean. A system of bells was maintained to summon Mr. Govro to perform his duties in this respect. Mr. Govro testified that his hours were from 8:30 A.M. to 5:30 P.M., and that "At anytime there is anything on the floor to pick it up regardless of what time of the day it is. * * * I am always busy."

■ We think the jury, under the facts and circumstances shown, could have reasonably found that plaintiff stepped in and was caused to fall by, a deposit of gum on the third step of the stairway, which gum had been on said step for a least one hour and a half. The jury also could reasonably have found that the deposit of gum was on the step a sufficient length of time for the defendant, in the exercise of ordinary care, to have discovered and removed same before plaintiff stepped in it and fell. In other words there was, in our judgment, a jury question on the issue of constructive notice. Hogan v. S. S. Kresge Co., Mo. App., 93 S.W.2d 118.

■ Appellant also contends that the Court erred in not directing a verdict for defendant for the reason that plaintiff's own evidence shows that she knew of the existence of the condition which caused her injury. Appellant relies upon the well settled rule of law that a defendant-proprietor is not liable for injuries to an invitee-plaintiff due to dangers which are obvious, or which are as well known to plaintiff as to defendant. There is no doubt that appellant has correctly stated the law. The basis of liability in such cases is the proprietor's superior knowledge of an unreasonable risk of harm which the invitee does not know, or in the exercise of ordinary care, could not know. Ostresh v. Illinois Terminal R. Co., Mo., 313 S.W.2d 19; Stafford v. Fred Wolferman, Inc., Mo., 307 S.W.2d 468; Lindquist v. S. S. Kresge Co., 345 Mo. 849, 136 S.W.2d 303; Paubel v. Hitz, 339 Mo. 274, 96 S.W.2d 369; Mullen v. Sensenbrenner Mercantile Co., Mo., 260

S.W. 982, 33 A.L.R. 176. But such knowledge to bar recovery should be a present awareness of the defect or dangerous condition and a realization of its dangerous nature, or the condition should be of such a strikingly dangerous character that no reasonable person who had previously observed it would come into close proximity to it without recalling it to mind. Butler v. City of University City, Mo.App., 167 S.W.2d 442.

■ Certainly there are cases where a plaintiff should not, at the time of injury, be charged with previous knowledge of a dangerous condition and denied recovery by reason thereof. Whether he should depends upon the facts in each particular case. The striking nature of the defect in question, lapse of time and the existence of distracting circumstances, are all matters to be taken into account in arriving at a conclusion in such cases. And when it can be said that reasonable minds might differ on the matter the issue is for the jury.

■ In the case at bar plaintiff did observe something on the third step of the stairway on her first trip to the basement. The thing she saw was a small dark object about the size of a plum, and from the evidence it could reasonably be inferred that it was a deposit of gum. After she reached the basement, plaintiff shopped for drapes, tried on several dresses, bought a slip and purchased a pair of hose. These activities would certainly have a tendency to distract her mind from the dark spot she had previously seen on the stairway. At least one hour and a half elapsed between the time she first observed the gum and the time it caught her foot and caused her to fall. The defect or condition was not of such a striking nature as would likely produce a lasting effect upon the mind of one observing it. Under such circumstances reasonable minds might excuse her forgetting it, and not charge her at the time of her injury with knowledge of the condition. A contrary finding might also be made. This makes a jury question of the issue

The trial court did not err in refusing to direct a verdict under such circumstances.

■ Appellant contends that the Court erred in failing to give to the jury verdict forms as to defendant Miller. In support of this contention it is urged that appellant was prejudiced by such failure for the reason that a verdict returned in favor of defendant Miller would have absolved appellant of liability, since such liability could only be imposed by reason of Miller's negligence under the doctrine of respondeat superior.

At the conclusion of the evidence and prior to the submission of the case to the jury, the court made the following statement: "Let the record show that the plaintiff has offered no verdict-directing instruction in connection with the defendant Ralph Miller and that for that reason no verdict form is being given that would authorize a finding against that defendant." Counsel for appellant did not at the time interpose any objection to this action of the court. Later, after the instructions were read to the jury the court again informed appellant's counsel that no verdict forms would be submitted as to defendant Miller. Appellant's counsel did not object to this proposed procedure, nor did he request that such forms be given to the jury. The jury's verdict was as follows:

"We, the jury in the above cause, find in favor of the plaintiff, and against the deft. J. C. Penney Co., a corp., on the issues herein joined and assess her damages at the sum of Three Thousand Dollars."

In appellant's motion for new trial no complaint was made of the court's failure to give to the jury verdict forms as to defendant Miller. After appellant's motion for new trial was filed and prior to the court's order overruling same, plaintiff dismissed the case as to defendant Miller.

■ In view of the state of the record we do not believe it the duty of this court to interfere with the judgment for the reason assigned by appellant. The point urged was not raised below either at the trial or in the motion for a new trial. Furthermore it relates to an action of the trial court concerning which appellant could not complain. Lavignon v. Dietzel, Mo., 34 S.W.2d 92. If the court erred in failing to give proper verdict forms as to defendant Miller, plaintiff is the only one prejudiced thereby and the only one entitled to complain of the error. Leighton v. Davis, Mo., 260 S.W. 986. Our only concern is whether the record, by reason of the jury's failure to return a verdict against Miller, is in a condition where it can be said there is no final judgment in the case, thereby giving rise to a question as to the right of appeal. As to this it appears that the dismissal of the case as to defendant Miller made the judgment against J. C. Penney Company final. Lavignon v. Dietzel, supra; Bledsoe et al. v. Nickles, Mo.App., 91 S.W.2d 184. Plaintiff had a right to dismiss the case as to Miller at any stage of the proceedings even after the cause reached this court on appeal. Lavignon v. Dietzel, supra. Having entered such dismissal the judgment cannot be held to be void by reason of the failure of the jury to find for or against defendant Miller. Jackson v. City of Malden, Mo.App., 72 S.W.2d 850.

■ Appellant complains that instruction No. 5 was prejudicially erroneous because it requires that proof of contributory negligence *satisfy the jury* rather than said defense be proved *to the reasonable satisfaction* of the jury. Said instruction is as follows:

"The Court instructs the jury that the burden is upon the defendant to prove to the reasonable satisfaction of the jury by the preponderance of the evidence, the defense of contributory negligence; and, if he has failed to so prove and satisfy the jury, the finding must be for the plaintiff on the issue of contributory negligence."

It will readily be seen that appellant has misconstrued the meaning of the language

used. The instruction clearly requires proof to the reasonable satisfaction of the jury.

It is not urged that the use of the words *"to the reasonable satisfaction"* constitute reversible error, therefore we will not pass on the question. However, it is well to call to the attention of counsel that our Supreme Court has, by way of dictum, repeatedly criticized the use of said language. See Hustad v. Cooney, Mo., 308 S.W.2d 647, loc. cit. 650, where the subject is discussed at length. Although no case has ever been reversed on account thereof, it is dangerous practice to use such phrase in view of the repeated warnings of the Supreme Court.

We find no reversible error in the record. The judgment is affirmed.

WOLFE, P. J., and RUDDY, J., concur.