Grace Ruth **HARTLEY**, Appellant,

**v.**

R. C. **SMITH**, Administrator of the Estate of Guy Raymond Southwick, Deceased, Respondent.

No. 48880.

Supreme Court of Missouri,

Division No. 1.

March 12, 1962.

Donald E. Bonacker, Springfield, Lincoln, Haseltine, Keet, Forehand & Springer, Edmund C. Forehand, Springfield, for appellant.

J. Weston Miller, Gerald H. Lowther, Miller, Fairman, Sanford, Carr & Lowther, Springfield, for defendant-respondent.

COIL, Commissioner.

A few minutes after nine o'clock in the morning of September 17, 1959, Grace Hartley, the plaintiff below, was a front-seat passenger in an automobile being driven by Guy Southwick on Missouri Highway 13. His southbound automobile collided with a northbound car being driven by Gene Mayberry, at a place about three miles south of Humansville. Southwick was killed and plaintiff sought $100,000 from his estate as damages for alleged personal injuries. A jury found for defendant, the administrator of Southwick's estate. Plaintiff has appealed from the judgment which ensued. She contends the trial court erred in giving instructions 8 and 9.

At the time of the accident Highway 13 in the area in question was 20 feet wide (2 lanes). Its surface was a black-colored asphalt with an alternating black and white center line and with usable shoulders six feet in width. The collision point was on, or on the approach to, the "gradual crest" of a hill. The pavement was dry and there is no claim that visibility was not adequate.

Veda Gilbert, also a front-seat passenger, testified that when Southwick, driving south on his right side of the road at 60 to 70 miles per hour, started up a gradual incline, she saw a northbound automobile (the Mayberry car) come over the hill crest about 300 feet away traveling on the wrong side of the road, i. e., in the west or southbound lane; that thereafter the Mayberry car swerved toward or back to its right side of the road and Southwick remarked that it was about time he (the other car) got back on his side; that thereafter Southwick swerved to his left and, almost immediately, into collision with the northbound car. The witness imagined that the Southwick car traveled about 150 feet from the time she saw the Mayberry car until the time of the collision.

The left front corner of the Mayberry car and the middle front of the Southwick car collided when their front ends were east of the center line and in the northbound lane. The Mayberry automobile came to rest at the east edge of the highway, partially on the east shoulder, facing east with its left rear wheel 18 feet north of the point of impact and five feet east of the center line. The Southwick car was turned around almost completely and came to rest with its rear about 26 feet northwest of the impact point on the west side of the highway and with its front facing northwest. Skid marks made by Southwick's right tires started at a point 1'10" from the right or west edge of the pavement, traveled south along the right side of the road about 60 feet and then swerved to the left (the discernible mark was 75 feet long); the skid mark made by Southwick's left tires was 104 feet long and ran 73 feet on the west side of the center line and 31 feet after crossing to the east side of the center line. The Mayberry automobile left four skid marks, a separate mark having been made by each of the tires, indicating, according to the testimony, that the steering wheel had been jerked sharply to the right as the vehicle started to skid partially sideways north-

wardly as it traveled northeastwardly toward its northbound traffic lane. The skid marks made by Mayberry's car originated in the west or southbound lane. The skid mark made by Mayberry's left front tire ended at or just east of the center line and was 36 feet in length running from the southwest to the northeast. The skid marks made by the other Mayberry tires ran in the same direction and were estimated to be about 44 feet in length. The distance from the rear axle to the back bumper on the Mayberry car was 4'2" so that as the Mayberry car skidded sideways as it traveled northeastwardly its rear was farther to the west than the left rear tire and it was estimated that the rear end would have been as much as four or five feet west of the center line although it is not clear in the record whether that estimate applied to collision time or to what point during the car's approach to the impact point.

Plaintiff's verdict-directing instruction 1 authorized a verdict upon the hypotheses that Southwick saw or in the exercise of requisite care should have seen that the approaching Mayberry automobile was returning to the northbound lane but would not reach a position of safety and that a collision was likely (we assume plaintiff meant unless Southwick acted) and that thereafter with the means at hand, etc., he could have avoided the collision by swerving to the right but failed to do so and was thereby negligent and as a direct result injured plaintiff.

Plaintiff's instruction 4 informed the jury that if it found Southwick negligent as submitted in instruction 1, then, even though it found that some negligence of Mayberry combined or concurred with that of Southwick to injure plaintiff, the verdict would be for plaintiff and against defendant.

Instruction 8, given at defendant's request, purported to be a sole cause instruction. It hypothesized that Southwick was driving south and Mayberry north and that "at such time and place" Mayberry "was driving his automobile wholly or partially to the left of the center of such highway as such automobile approached and was in close proximity" to Southwick's automobile, and upon the finding of such facts directed a defendant's verdict provided the jury found that the sole cause of the collision was Mayberry "so. driving his automobile to his left of the center of the highway under such circumstances" and that the collision "was not caused or due to negligent acts" of Southwick as submitted in other instructions.

Defendant's instruction 9 informed the jury that the drivers of approaching automobiles are required to turn their vehicles to the right so as to pass without interference, but that there are circumstances justifying one in turning to the left instead of to the right; and thus, said the instruction, if the jury found that Southwick, driving on his right-hand side of the highway immediately before the collision, saw another car approaching on Southwick's side and that "it reasonably appeared to * * * Southwick * * * that there would be a collision unless he turned to the left, and acting upon such appearance he swerved his car in that direction" and in so doing exercised the highest degree of care, he was not guilty of negligence and the verdict should be for the defendant.

Plaintiff first contends that the evidence was not sufficient to support any sole cause submission and that consequently the trial court erred in giving instruction 8. Specifically, plaintiff says there was no evidence from which a jury reasonably could find that Southwick's negligence was not at least a concurring cause of the collision and plaintiff's injuries. We do not agree. It is true that the witness Gilbert, the only witness in the case who testified on the subject, said that Southwick swerved to the left (into certain collision) *after* the Mayberry car had begun to return to the northbound lane, and it is also true that all of the evidence showed that the acci-

dent could have been avoided by Southwick's swerving to the right. But the defendant was not bound by witness Gilbert's testimony. The jury was entitled to believe or disbelieve all or any part of it. In determining whether there were facts justifying any sole cause instruction, we view the evidence from a standpoint favorable to defendant and give him all the reasonable inferences to be drawn therefrom. So viewing the evidence in this case and, thus, taking into account the available estimates of speed and distances, the testimony as to skid marks, and the place at which the Southwick car swerved, we are of the opinion that there was evidence from which the jury reasonably could have found these facts: That when Southwick swerved left, the front of his automobile was 30 or 40 feet from the point of impact, and that Mayberry's automobile proceeding northwardly on the wrong side of the road was then about 50 feet from the impact point and had not yet begun to move toward his right side of the road; that the Mayberry car was at that instant traveling at least 70 miles per hour and Southwick, due to slowing, was traveling at a lesser speed; that under those circumstances, not more than 80 or 90 feet separated the front ends of the two automobiles which were traveling toward each other at high speeds on the same side of the road about a half second away from a head-on collision. If a jury found the circumstances to be as suggested above, the question whether Southwick was negligent in swerving left was for the jury to decide.

■ Plaintiff next contends that instruction 8 was erroneous in form. A correct sole cause instruction must hypothesize facts from which a jury reasonably may find that the negligence or acts submitted constituted the sole cause of plaintiff's injury, and it must also negative defendant's negligence as submitted by plaintiff. Payne v. Smith, Mo., 322 S.W.2d 764, 769(7). Instruction 8, as we have heretofore noted, authorized the jury to find that Mayberry's negligence was the sole cause of the collision if it found he drove his automobile on the left of the highway as it approached and was in close proximity to Southwick's automobile. The instruction entirely ignored the issue whether there were facts excusing or justifying Southwick's violations of the law in failing to drive on his right half of the roadway and in failing to turn to the right when passing a vehicle proceeding in the opposite direction. Sections 304.014, 304.015, subd. 2. and 5.(5), RSMo 1959 and V.A. M.S. Those were negligent acts unless excused or justified by the circumstances, Wines v. Goodyear Tire & Rubber Co., Mo. App., 246 S.W.2d 525, 528(1–3), and there can be no doubt that such negligence, if any, was a proximate cause of the collision.

It seems apparent, therefore, that to eliminate Southwick's act in driving to and on the wrong side of the road as concurrent negligence, the jury must have found from hypothesized facts that at the time he so acted in violation of law he was justified in so doing by the circumstances then existing. This the instruction failed to require and it was thereby fatally defective. Long v. Mild, 347 Mo. 1002, 149 S.W.2d 853, 858(9, 10); Semar v. Kelly, 352 Mo. 157, 176 S.W.2d 289, 293(7–9). Incidentally, we observe that defendant recognized that a finding of "justification" for Southwick swerving left was a necessary prerequisite to a verdict for him. That is demonstrated by the fact that he required the jury to so find by his instruction 9, the substance of which we have set forth heretofore.

It is true that instruction 8 negatived defendant's negligence as submitted in plaintiff's instruction. Such is an essential element of a proper sole cause instruction, Payne v. Smith, supra, but compliance with that requirement does not serve to eliminate the necessity to also comply with the separate and independent requirement for a proper sole cause instruction in this case, viz., that the jury determine the fact issue, essential to a "sole cause" defense in this

case, whether Southwick's violations of law were excused or justified under facts which must have been hypothesized. Long v. Mild, supra. Furthermore, in this case plaintiff's verdict-directing instruction was based on the theory that Southwick negligently failed to observe Mayberry returning to his proper lane and that *thereafter* Southwick negligently failed to swerve to his right, while a justification for Southwick's swerving left had to be based upon the theory that Southwick swerved left *before* he saw or should have seen Mayberry begin to return to his proper lane. Consequently, in no event could the negativing of defendant's negligence as submitted in plaintiff's instruction have eliminated the necessity for requiring the jury to find that Southwick was justified in turning left.

Defendant, apparently inadvertently, hypothesized (instruction 8) that plaintiff's injury was "the sole direct proximate result" of Mayberry's driving on the wrong side of the road rather than that such driving was the "sole cause of" plaintiff's injury; a matter easily corrected in the event of a new trial.

What we have said with respect to the existence of a factual situation to support a sole cause instruction will suffice to indicate our view that there was evidence to support the theory of instruction 9, i. e., that there was a jury question whether under certain facts it reasonably should have appeared to Southwick in the exercise of the highest degree of care that he should swerve left in order to avoid a collision. Defendant will, no doubt, consider plaintiff's further criticisms of instruction 9 in the event of another trial.

The judgment is reversed and the case is remanded.

HOLMAN, and HOUSER, CC., concur.

PER CURIAM.

The foregoing opinion by COIL, C., is adopted as the opinion of the court.

All concur.