A. J. ARNOLD, Plaintiff-Appellant,

v.

Opal FISHER, Defendant-Respondent.

No. 8085.

Springfield Court of Appeals.

Missouri.

Aug. 18, 1962.

Motions for Rehearing or to Transfer Overruled Sept. 11, 1962.

Douglas & Douglas, Neosho, for plaintiff-appellant.

Ruyle & Henry, Neosho, for defendant-respondent.

STONE, Judge.

In this jury-tried action for damages in the sum of $15,000 on account of injuries alleged to have resulted from a vehicular collision, plaintiff appeals from an adverse judgment entered upon a unanimous jury verdict for defendant. About 7:30 A.M. on February 25, 1961, "a cold, frosty morning," A. J. Arnold, plaintiff herein, was riding in a 1958 Mercury sedan, owned by his son Bobby Lee (not then in the automobile), and being driven by his son Darrell, eighteen years of age. The Arnolds were proceeding in an easterly direction on U. S. Highway 60, which has a two-lane blacktop roadway approximately 24 feet in width, en route from the Arnold farm home near Seneca to Neosho where plaintiff was employed regularly and Darrell intended to seek employment. After traveling about one mile on Highway 60, "going upgrade all the time," at a speed estimated by both plaintiff and Darrell at 30 to 35 miles per hour, the right front fender of the eastbound Mercury ran into the left rear fender of a 1952 Ford automobile, also headed toward the east but then standing motionless, in which Mrs. Opal Fisher, defendant herein, had left her nearby farm home a very few minutes previously, en route to her regular employment in Neosho. Of the position of the Fisher Ford at the time of collision, we shall treat shortly.

Due to weather conditions, the windshields and windows of automobiles left in the open overnight (as both the Arnold Mercury and the Fisher Ford had been) were covered with frost in the early morning. With respect to the Arnold Mercury, plaintiff and his son Darrell testified that they had cleaned the windshield and rear window before they started that morning and that the windshield remained clear thereafter. With respect to the Fisher Ford, defendant and her husband said that, while she had finished dressing he had started the motor, warmed up the automobile, turned on the defroster, and "cleaned the frost off the windshield," and that, when defendant left the Fisher farm home, the windshield was clear and both the heater and the defroster were operating. However, when defendant turned from the Fisher driveway to the east onto Highway 60 and "the sun hit the windshield * * * it went to frosting over." Defendant drove "real slow" but the windshield "just kept covering." In her lan-

guage, "I drove pretty near to the top of the hill; I was trying to make it to Cook's (the next) driveway but I couldn't make it that far because I couldn't see to get there." So, she stopped.

*Defendant* fixed the point where she stopped as even with a clump of small trees on the south side of the highway, and defendant's witness Edsell, a civil engineer who subsequently made measurements and prepared a plat received in evidence, located that point as being approximately 650 feet east of the driveway (hereinafter referred to as the Fisher driveway), from which defendant had turned onto Highway 60. Upon trial, *plaintiff* testified that the collision had occurred "somewhere between 450 and 500 feet" east of the Fisher driveway. His pretrial deposition estimate of that same distance had been about 150 feet.

*Defendant's* evidence was to the effect that she had been unable to pull completely off the blacktop, because the south shoulder of Highway 60, at and near the point of accident, was not as wide as an ordinary automobile and fell off sharply into a deep ditch. She frankly admitted that, when she stopped, the left wheels of the Fisher Ford were "about 18 or 20 inches" north of the south edge of the blacktop, but she insisted that "I pulled over as far as I could"—"on the south side of the highway as far as I could get over." *Plaintiff's* evidence was to the effect that the south shoulder was of sufficient width to permit the parking of an automobile completely off the blacktop, but that the Fisher Ford was entirely on the blacktop with its *left* wheels about 2 feet south of the center line. In this connection, we note that, with the record affirmatively showing the width of the Fisher Ford as 6 feet 2 inches, Darrell also thought that the *right* wheels of the Fisher Ford were "within a foot" of the south edge of the 24-foot blacktop.

Regardless of the precise position of the Fisher Ford, defendant had turned off the ignition, had alighted from the automobile, and was "scraping real fast" on the windshield with a razor blade carried for that purpose, when she saw the eastbound Arnold Mercury "coming around the curve" west of the Fisher driveway. As to the unobstructed sight distance to the west, i. e., the distance at which the Fisher Ford could have been seen by an eastbound motorist such as Darrell, (a) defendant's witness Lett, eastbound on Highway 60 and the first motorist to stop at the scene of accident, estimated "around 1,000 feet," (b) defendant's husband estimated "around 900 feet," (c) defendant's witness Edsell after observation and measurement stated 800 to 850 feet, and (d) both plaintiff and his son Darrell thought about 550 feet. But whatever the distance at which the Fisher Ford *could* have been seen, *plaintiff* and *his son* (in precise accord on this detail also) agreed that neither *did* see the Ford until it was "about 20 feet" distant; and, with their testimony still following the same track, both said that, although Darrell swerved to his left, he *could not go around the Fisher Ford* because of an approaching westbound truck which they sighted about the same time they saw the Ford and which passed "right before" the collision. Defendant saw no such westbound vehicle. Admittedly, no truck stopped. In any event, Darrell never applied the brakes on the Arnold Mercury and its right front fender ran into the left rear fender of the Fisher Ford with the Mercury still traveling at undiminished speed estimated by plaintiff at "between 30 and 35 miles" per hour. As a result of the impact, the Ford was knocked forward or to the east about 20 feet and the Mercury "bounced back" and "nosed right down in the (south) ditch."

The only explanation or excuse offered by plaintiff or his son Darrell for their admitted failure to see the Fisher Ford until they were within 20 feet of it was that they had been blinded by the rising run or, as Darrell put it while seeking more innocuous language after plaintiff's counsel objected to use of the term "blinded," "it (the sun) didn't blind me; it just obstructed my vision for awhile." *Darrell* offered considerable testimony on this subject, not all of it easily reconcilable. His first statement

in this evidentiary area was that the sun had been in his eyes *"just momentarily, just when you came around that curve"* west of the Fisher driveway. (All emphasis herein is ours.) When asked later whether anything had prevented him from seeing the Fisher Ford as he had rounded that curve, Darrell's response was, "well, the sun would be the only thing; *I could see for a good distance,* but I wasn't expecting her to be up there." But, to the second succeeding question as to whether "the sun blinded you * * * as you came around the curve," Darrell agreed, "yes, where *I couldn't see a good distan*ce." Although stating that he could see farther than 20 feet, he readily agreed that he had not seen the Fisher Ford until "about 20 feet" from it, repeating that "I wasn't looking for her because I wasn't expecting her to be there." Further along in his cross-examination, Darrell insisted that he *"wasn't blinded"* as he rounded the curve west of the Fisher driveway and that he "could see all right from the time (he) came around the curve up to the driveway"; but, "when I hit the driveway, the sun hit my eyes about the same time." *Plaintiff* said that the sun "blinds anybody going up the hill early of a morning" but immediately denied that it had blinded him. "I could see all the time"— "yes, about 30 feet ahead" of the Mercury.

*Plaintiff's* witness Reed eastbound on Highway 60, who stopped at the accident scene, said that he was "not completely" blinded as he rounded the curve west of the Fisher driveway, but that "you couldn't see as good as you could (on) an ordinary day." According to Reed, he saw the damaged automobiles when he was "maybe a hundred feet" distant. *Defendant's* witness Beavers also eastbound, who had entered Highway 60 from his home driveway only some 300 feet west of the Fisher driveway, had experienced the same difficulty as defendant in that the windshield of the Beavers automobile, although clear when he left home, had "frosted over pretty well" by the time he reached the Fisher driveway, but never-

theless Beavers said that "as soon as I rounded that curve I could see something up there, some cars." *Defendant's* witness Lett, likewise eastbound on the highway en route from Wyandotte, Oklahoma, to Springfield, said that there was "some sun through the windshield" but that "it wasn't so bright but what you could see the wreck" rounding the curve west of the Fisher driveway.

The only alleged negligence, on which the case was submitted by plaintiff's sole verdict-directing instruction 1, was "that the defendant failed to exercise the highest degree of care in that defendant stopped her automobile on the traveled portion of said highway and negligently left said automobile stopped on said highway in front of oncoming traffic." Upon appeal, plaintiff's principal point is that the trial court erred in giving defendant's sole cause instructions F and G. The primary reason assigned in subpoint (a) is that, since "at least a part of defendant's car was left stopped on the traveled portion of the highway, * * * this is not a true sole cause situation because it could not be said that defendant was free and clear of all negligence on her part." Or, as the same subpoint is presented in plaintiff's argument, "all reasonable persons would have to say that defendant was at least guilty of concurring negligence on her part and that under these facts defendant could not be cleared of contributory (sic) negligence to the extent that a sole cause situation existed."

The gist and substance of this subpoint is that, regardless of whether Darrell (the driver of the Arnold Mercury in which plaintiff was riding) was negligent, defendant was guilty of negligence *as a matter of law* and thus a sole cause instruction should not have been given. Wilkins v. Stuecken, 359 Mo. 1047, 1052, 225 S.W. 2d 131, 134(3); Wilson v. Toliver, 365 Mo. 640, 651, 285 S.W.2d 575, 581–582(9). However, plaintiff offered no motion for a directed verdict [Rule 72.01; Section 510.-

280][1] and sought no peremptory instruction; but, on the contrary, plaintiff treated defendant's negligence as an issue for determination by the jury and submitted that issue by plaintiff's instruction 1. In these circumstances, plaintiff did not preserve for appellate review, and is precluded from urging here, the assignment that the trial court erred in giving defendant's sole cause instructions because (so plaintiff asserts) defendant was guilty of negligence as a matter of law. This was the specific holding in Warren v. Weaver, Mo. App., 343 S.W.2d 682, 684–685(3). See Robbins v. Robbins, Mo., 328 S.W.2d 552, 555(1), and Heideman v. Lorenz, Mo., 349 S.W.2d 230.

■ Although the foregoing is dispositive of this subpoint, it may not be inappropriate to add that, if plaintiff's contention were to be ruled on its merits, we would be impelled to deny it. In determining whether the facts justified the giving of a sole cause instruction, it would be our duty to view the evidence in the light most favorable to defendant and to give her the benefit of all favorable inferences fairly and reasonably deducible therefrom. Hartley v. Smith, Mo., 354 S.W.2d 854, 857(2); Ketcham v. Thomas, Mo., 283 S.W.2d 642, 650; Hopkins v. Highland Dairy Farms Co., 348 Mo. 1158, 159 S.W.2d 254, 255(1). If, as defendant positively testified, the windshield of the Fisher Ford was clear when she left home but, as soon as she turned onto the highway and "the sun hit the windshield * * * it went to frosting over" and "just kept covering" (and the testimony of witness Beavers tended to confirm this), and if, although she tried "to make it" to the next driveway, "I couldn't make it that far because I couldn't see to get there," she had a duty, with her vision thus materially impaired, to exercise care commensurate with the existing situation [Duffy v. Cortesi, 2 Ill.2d 511, 119 N.E.2d 241, 245; Templar v. Tongate, 71 Wyo. 148, 255 P.2d 223, 229]; and if, unable to see ahead, she nevertheless had proceeded blindly, she would have irresponsibly invited disaster to herself and others and recklessly hazarded the risk of being branded as negligent, perhaps as a matter of law. See Phillips v. Stockman, Mo.App., 351 S.W.2d 464, 471(8), and cases collected in footnote 6.

■ Defendant definitely stated that "I pulled over as far as I could"—"on the south side of the highway as far as I could get over," thus placing the left wheels of the Fisher Ford only 18 or 20 inches north of the south edge of the blacktop and leaving more than 22 feet of the blacktop roadway unobstructed, of which more than 10 feet (and thus considerably more than the width of an ordinary automobile such as the Arnold Mercury) was between the left side of the Fisher Ford and the center line of the blacktop.[2] It was what we colloquially refer to as "broad daylight" and the unobstructed sight distance to the rear, or to the west, was not less than 800 to 850 feet. Mindful that, under defendant's evidence, the Fisher Ford was placed with its right side "as near the right-hand side of the highway as practicable" [Section 304.015, subd. 1] and that the *only* negligence submitted was "that defendant stopped her automobile on the traveled portion of said highway and negligently left said automobile stopped on said highway in front of oncoming traffic," we could not say, upon the record presented, that, in stopping briefly for the reason and

1. All references to rules are to the Missouri Rules of Civil Procedure, V.A.M.R., and all references to statutes are to RSMo 1959, V.A.M.S.

2. Although some of defendant's quoted testimony was conclusionary in nature and might have been excluded upon timely objection or motion to strike, its probative worth and effect were for the jury in the absence of any such objection or motion. Lomax v. Sawtell, Mo.App., 286 S.W.2d 40, 42(1); Mayne v. May Stern Furniture Co., Mo.App., 21 S.W.2d 211, 213(2); Ferrell v. Sikeston Coca-Cola Bottling Co., Mo.App., 320 S.W.2d 292, 296(7), and cases collected in footnote 2.

at the place she did, defendant was negligent *as a matter of law.* See again Phillips v. Stockman, supra.

■ The only case, to which plaintiff refers in his argument, is Beahan v. St. Louis Public Service Co., Mo.App., 213 S.W.2d 253, a split decision with respect to which it will suffice to comment as did our Supreme Court in Lynn v. Kern, Mo., 323 S.W.2d 726, 730: "There was a strong dissent. Whether the Beahan case is right or wrong it does not present the situation we have here. The defendant did not submit that the sole cause of plaintiff's injuries was (his) own negligence." Other cases cited by plaintiff (but not referred to in argument) do not support the assignment of error in subpoint (a). It may be observed in passing that defendant's sole cause instructions in the instant case do not exhibit the manifest frailties of the criticized instructions in plaintiff's cited cases, e. g., cryptic submission on the hypothesis of abstractions only [Ketcham v. Thomas, supra, 283 S.W.2d loc. cit. 651], or failure to require a finding that the negligence of plaintiff's host driver was the sole cause of the collision and plaintiff's injuries [Happy v. Blanton, Mo., 303 S.W.2d 633, 636–637], or failure to require a finding excluding or negativing defendant's negligence as submitted in other instructions. Dulley v. Berkley, Mo., 304 S.W.2d 878, 883–884.

■ In subpoint (b), plaintiff complains that defendant's sole cause instructions F and G were erroneous "because they fail to sufficiently *hypothese* the factual situation in regard to *defendants* evidence and to properly state all factual elements necessary for a sole cause instruction." This subpoint is not developed, in fact is not even mentioned, in the argument section of the brief. However, in a second sentence in the subpoint, plaintiff states that "it was a disputed question as to the exact location of *defendants* automobile on the traveled portion of the highway," so (that being the *only* "factual element" mentioned) the gist and import of this complaint is that the sole cause instructions did not require a finding "as to the exact location of *defendants* automobile on the traveled portion of the highway." True, a finding of "exact location * * * on the traveled portion of the highway" was not required in the sole cause instructions. But the initial finding required in both such instructions was that "defendant stopped her vehicle upon U. S. Highway 60 at a point where the view from the west along said highway was unobstructed for a distance of approximately 700 to 800 feet"; and, as we have noted, there was ample evidence from which the jury reasonably might have so found.[3]

■ It is an altogether appropriate and adequate answer to plaintiff's complaint to point out that, in his sole verdict-directing instruction 1, he was content to submit in the broadest of terms, i. e., "that defendant stopped her automobile on the traveled portion of said highway," which certainly did not require a finding as to "the exact

---

3. *Instruction F* required additional findings (1) that Darrell, "in the exercise of the highest degree of care, saw or should have seen the defendant's car where it was stopped on the highway approximately 700 to 800 feet ahead," (b) that Darrell "failed to exercise the highest degree of care * * * in that he negligently and carelessly failed to keep and maintain a reasonably careful and vigilant lookout for other vehicles upon the road," (c) that "such conduct on his part was negligence," (d) that "whatever injuries plaintiff received resulted solely from such negligence of the said Darrell Arnold," and (e) "that defendant was not guilty of any negligence under other instructions given you herewith." *Instruction G* required the same finding (a), followed by findings that Darrell "became blinded so that he could not see his way ahead, at a point when the defendant's car was then approximately 600 to 650 feet ahead stopped on the highway" but that Darrell "after becoming blinded continued to drive his car while blinded for a distance of approximately 600 to 650 feet to the point of collision at a speed which was high and excessive under the circumstances," and then findings similar to (c), (d) and (e), supra.

location of *defendants* automobile on the *traveled* portion of the highway" or, for that matter, even a more general finding as to whether it was *entirely* on the blacktop as plaintiff said or only *partially* thereon as defendant insisted. Regardless of the sufficiency of the hypothesization as to the location of defendant's automobile in the sole cause instructions (concerning which we need not express an opinion), plaintiff will not be heard to complain where his verdict-directing instruction submitted the same "factual element" in language similarly general and no more specific.[4]

■ Furthermore, in a case such as this which was submitted on a single charge of *primary* negligence and in which the facts were simple, "easily understood and within the common knowledge of the members of the jury" [Carson v. Evans, 351 Mo. 376, 381, 173 S.W.2d 30, 32; Kelly v. Kansas City Public Service Co., Mo., 335 S.W.2d 159, 164], recent holdings of our Supreme Court sound the timely warning that, in the absence of plainly confusing or misleading instructions manifestly infringing substantial rights in a demonstrably substantial manner, there is no error "materially affecting the merits of the action" [Rule 83.13(b); Section 512.160(2)] and the granting of a new trial is neither required nor justified. Kelly, supra, 335 S.W.2d loc. cit. 164(8); Stewart v. Boring, Mo., 312 S.W.2d 131, 134; McGhee v. Jones, Mo., 336 S.W.2d 722, 726. We may say with respect to instructions F and G in the case at bar, as did the Supreme Court concerning a sole cause instruction assailed in Happy v. Blanton, supra, 303 S.W.2d loc. cit. 640: "There was no misdirection by the instruction(s), and we do not see how the jury could have been confused by

(them). In the final analysis these are the two basic tests which determine the sufficiency of any instruction." Subpoint (b) is disallowed.

■ In subpoint (c), plaintiff asserts that the trial court erred in giving "two sole cause instructions F and G submitting the same theory along with a contributory negligence instruction D." It is a fundamental and time-honored principle of appellate procedure that a trial court must be afforded an opportunity to review and correct its own errors before the aid of an appellate court may be invoked. State ex rel. Morton v. Cave, 359 Mo. 72, 220 S.W.2d 45, 49(4); Brown v. Thomas, Mo.App., 316 S.W.2d 234, 236(3); Gover v. Cleveland, Mo.App., 299 S.W.2d 239, 243(12). Thus, the plain requirement of Rule 79.03 [see Section 512.160(1)] that "(a)llegations of error, in order to be preserved for appellate review, must be presented to the trial court in a motion for a new trial" is held to be mandatory [C & O Distributing Co. v. Milner Hotels, Mo.App., 305 S.W.2d 737, 738(1); Gosnell v. Gosnell, Mo.App., 329 S.W.2d 230, 234(5) ]; and excepting only those questions particularized and enumerated in Rule 79.03 (none of which are applicable here), a party is precluded from urging on a civil appeal any allegation of error not presented to the trial court in a motion for new trial. Mayor v. Mayor, Mo., 349 S.W.2d 60, 62–63(2); State ex rel. State Highway Commission v. Dockery, Mo., 340 S.W.2d 689, 695(8); Robbins v. Robbins, supra, 328 S.W.2d loc. cit. 555(4, 5); Fruit Supply Co. v. Chicago, B. & Q. R. Co., Mo.App., 119 S.W.2d 1010, 1011(4). Referring particularly to instructions, Rules 79.03 and 70.02 permit specific objections to instructions to be made

---

4. Terrell v. Missouri-Kansas-Texas R. Co., Mo., 327 S.W.2d 230, 238–239(14); Stewart v. Boring, Mo., 312 S.W.2d 131, 133–134; Layton v. Palmer, Mo., 309 S.W.2d 561, 569–570(17), 66 A.L.R.2d 1242; Palmer v. Lasswell, Mo., 287 S.W.2d 822, 828(5); Zumwalt v. Utilities Ins. Co., 360 Mo. 362, 228 S.W.2d 750, 755(5); Roeslein v. Chicago & E. I. R. Co., Mo., 214 S.W.2d 13, 18(6); Carson v. Evans, 351 Mo. 376, 173 S.W.2d 30. See particularly Moses v. Kansas City Public Service Co., 239 Mo.App. 361, 377, 188 S.W.2d 538, 547(15). And, see generally the multitude of cases collected in West's Missouri Digest, Appeal and Error, ☞882(12).

wholly before submission to the jury, wholly in the motion for new trial, or partly before submission and partly in the motion for new trial [Sullivan v. Hanley, Mo.App., 347 S.W.2d 710, 711(1)], but an alleged error not presented by specific objection at one place or the other is not preserved for appellate review. O'Brien v. City of St. Louis, Mo., 355 S.W.2d 904, 908(8); Wolff v. Richardson, Mo. App., 358 S.W.2d 112, 116(5). See also Adair v. Cloud, Mo., 354 S.W.2d 866, 871 (5); Hartz v. Heimos, Mo., 352 S.W.2d 596, 602(5). Not having been presented by specific objection either at the time of trial or in the motion for new trial, the complaint which instant plaintiff now asserts for the first time in subpoint (c) will not be considered.

■■■■ Finally, plaintiff now asserts that the trial court erred "in permitting defendant to read the deposition of M. E. Lett because Mr. Lett had been *subpoened* to be present and the court ruled the subpoena to be without force because it was issued in blank when as a matter of fact a subpoena issued in blank is good." Careful examination of the record reveals no ruling by the trial court that the subpoena, to which counsel refer, was "without force" or invalid. We do not presume error on the part of the trial court [Hardy v. McNary, Mo., 351 S.W.2d 17, 20(2, 3); Orlann v. Laederich, 338 Mo. 783, 92 S.W.2d 190, 197 (10)], and we will not indulge in speculation or implication to reach a labored conclusion that he erred. Osby v. Tarlton, 336 Mo. 1240, 1253, 85 S.W.2d 27, 34(6). Furthermore, the alleged error averred with particularity in plaintiff's motion for new trial was that: "The court erred in permitting the defendant to read the deposition of M. E. Lett in evidence because Mr. Lett had been *subpoened* in Newton County, Missouri, and was available under the subpoena as a witness and the record shows a valid subpoena issued for Mr. Lett and properly served. Plaintiff had a right to require the defendant to put the witness on the stand instead of using the deposition." We observe parenthetically that nothing in the transcript indicates that Lett "was available under the subpoena as a witness." In any event, the same fundamental and time-honored principle of appellate procedure noted in our discussion of subpoint (c), supra, forbids our consideration of the point *now* urged which is radically different from that specifically averred in the motion for new trial. See Grapette Co. v. Grapette Bottling Co., Mo.App., 286 S.W. 2d 34, 37, and cases there cited.

The judgment should be and is affirmed.

McDOWELL, J., concurs.

RUARK, P. J., not sitting.