Helen C. McGRURY, Plaintiff-Respondent,

v.

KANSAS CITY, Missouri, a Municipal Corporation, Defendant-Appellant.

No. 24264.

Kansas City Court of Appeals.

Missouri.

Dec. 6, 1965.

Billy S. Sparks, Harold T. Van Dyke, Linde, Thomson, Van Dyke, Fairchild & Langworthy, Kansas City, for appellant.

Thos. J. Conway, Jr., E. E. Thompson, Popham, Thompson, Popham, Trusty & Conway, Kansas City, for respondent.

SPERRY, Commissioner.

Mrs. McGrury, plaintiff, sued defendant, owner of the Kansas City Municipal Auditorium, hereafter known as auditorium, for damages growing out of personal injuries received by her when she fell on a ramp in the auditorium on the evening of March 11th, 1961. She suffered a broken right knee cap and had a verdict for $10,000.00. From a judgment thereon defendant has appealed.

Defendant's first contention is that no submissible case was made. We shall review the facts from a standpoint most favorable to plaintiff's theory of recovery. The major portion of the testimony is not in dispute. Wherever material facts are in dispute we will accept as true those most favorable to plaintiff's theory of recovery. The rule is stated in Zachary v. Kroger, Inc., 332 S.W.2d 471, 473.

Defendant leased the auditorium to the Police Benefit Association and to the George A. Hamid Circus Company for the sum of $600.00 per day. On the evening of March 11th, 1961, plaintiff, her daughter, two grandchildren, her son and his fiancee, were guests and attended the evening circus show; they were admitted on tickets purchased for that purpose. Plaintiff, her daughter and grandchildren arrived in the auditorium at about 7:30 P.M. They proceeded up a ramp, to the balcony, to their reserved seats. Plaintiff was not familiar with the location of the various ramps with reference to the location of her seat, and she did not identify the ramp she ascended. She fell and was injured while descending a certain identified ramp after the evening performance had ended, at about 11:15 P.M.

There was evidence to the effect that, in addition to leasing the auditorium for the circus performance, defendant had leased to others the right to sell, for consumption

on the premises, certain types of merchandise, consisting of popcorn in boxes, candy floss on sticks, hot dogs sold in paper wrappers, peanuts, coke and other beverages sold in paper containers; that, on March 11th, 1961, there were three circus performances, at 10:30 A.M., 2:30 P.M., and at 8:20 P.M.; that the attendance was: Morning, 5043; Matinee, 8500, Evening, 8800; that defendant employed a regular crew of eleven men who came to work at 8:00 A.M. and left at 5:00 P.M., sometimes later; that their duty was to clean the foyers and ramps of debris left there by patrons during the daytime performances; that a single janitor came on duty about 4:00 P.M. and remained until about 11:00 P.M., during which time he cleaned up wherever needed; that a night crew came on at 11:00 P.M. and cleaned the entire auditorium, readying it for the next day's activities; that this was the procedure followed on March 11th, 1961; that the ramps were on a 15° slope and were smooth, no cleats.

Plaintiff testified to the effect that, as she walked up a ramp to the balcony and her seat, she did not notice any debris or popcorn on the ramp; that plaintiff's daughter and children accompanied her; that this was not the ramp upon which plaintiff fell as she came down from the balcony.

The testimony of plaintiff's son and his then fiancee, Janet, (wife at the time of the trial) was that they arrived late that evening, after plaintiff had been seated; that they travelled up the same ramp upon which plaintiff later fell; that very few people were on it and they could see it clearly; that it was covered all over with popcorn boxes, paper coke or candy containers, and powdered, dirty popcorn grains and husks; that it was so bad as to be dangerous for Janet, in her high heels; that she held on to her escort and picked her way around the worst of the litter; that, when they arrived at their seats, adjoining plaintiff's seat, the son had to remove debris from under the seat in order to get it down so

that they could be seated; that they left ahead of plaintiff and ahead of the crowd, after the show; that few people were on the ramp as they came down; that they could see the debris clearly; that it was in about the same condition as it had been in when they first came over it. This was about three hours after they first entered the auditorium.

Plaintiff stated that she left her seat at about 11:15, after her son and fiancee had left; that, by the time she and her party reached the ramp, the crowd on the ramp was so dense that she had to restrain one of the grandchildren to prevent colliding with those in front; that she occasionally came in personal contact with her daughter as she followed her; that she could not look down or see the ramp; that she stepped on a foreign object; that her right leg went out and she went down on her right knee; that she eventually, lay across the ramp; that, after the crowd thinned out, she saw that the ramp was covered with greasy powdered popcorn, paper, boxes, and other debris; that she later, identified the ramp upon which she fell; that, prior to her fall, she had no knowledge of the littered condition of the ramp. The evidence was to the effect that she was in a cast, in the hospital, for several weeks, undergoing surgery and treatment for a broken knee cap. She has a scar around her knee. Her leg is weak. She cannot climb or descend steps except haltingly. She cannot kneel in Church, or to scrub or clean floors or bath tubs. She suffers from pain in her knee when she kneels. She has "slowed down" a great deal as a result of her disability. This testimony was given three and one half years after she fell.

Dr. McCullough, an orthopedic surgeon, testified as to her surgical and hospital care, and stated that her condition, as above described, would likely not change materially in the future.

There was testimony from plaintiff, her daughter, her son, his wife, and her husband, to the effect that, immediately after

she fell and before she was removed to first aid and, later at the hospital, she had dirty powdered popcorn husks, grains, and grease on her coat, her shoes, and her purse; that she gave her suede shoes to charity because she could not get the grease out of them. Her husband stated that much of her housework, washing, ironing, scrubbing, etc. she was unable to do, and that it was now being done by a maid.

█ The basis of recovery in this kind of case is stated in Milliken v. Trianon Hotel Company (Mo.App.), 364 S.W.2d 71, 74. There was substantial evidence from which the jury could have found every necessary element to make a case. The jury could have found that defendant could and should have known that the ramp upon which plaintiff fell was covered with litter from about 8:00 P.M. when plaintiff's son and his wife arrived, until they left after 11:P. M., and that women who traversed it might slip, fall on the concrete, and suffer severe injuries, as plaintiff did. The jury could have found that defendant did nothing to remedy this dangerous situation for a period of more than three hours after it should have had knowledge thereof. Stafford v. Fred Wolferman, Inc. (Mo.), 307 S.W.2d 468, 474–475; Stocker v. J. C. Penney Co., et al. (Mo.App.), 338 S.W.2d 339, 343. No claim is made that defendant lacked knowledge of this condition, or that it warned plaintiff thereof. There is no showing, as a matter of law, that the dangerous condition was as obvious to plaintiff as it was to defendant. The question of negligence of defendant and of the contributory negligence of plaintiff were for the jury to determine. Stafford v. Fred Wolferman, supra, 307 S.W.2d 474.

█ From what we have said it follows that we cannot say that, as a matter of law, plaintiff assumed the risk by going where she knew that many children would drop debris on the ramps, or that plaintiff failed to exercise ordinary care for her own safety. She made a submissible case of negligence on the theory pleaded and tried.

The facts are dissimilar to those in Byron v. Fresh Pond Open Air Theatre, 333 Mass. 121, 128 N.E.2d 785, 50 A.L.R.2d 1452, Hudson v. Kansas City Baseball Club, 349 Mo. 1215, 164 S.W.2d 318, and other cases cited by defendant. Here, defendant recognized the danger to invitees because of accumulation of debris on the ramps and, customarily, took steps to remedy it but, on this occasion, failed to do so.

█ It is contended that plaintiff's main verdict directing instruction is prejudicially erroneous. In its motion for new trial defendant erroneously refers to this instruction as "No. 1", when in fact it is No. 2. It is clear that it intended to refer to No. 2, as No. 1 is merely a general instruction where no reference is made to the issues mentioned in plaintiff's verdict directing instruction. We will consider the criticisms mentioned in the brief and in the motion for new trial as though instruction No. 2 had been specifically mentioned.

The instruction is as follows:

### "INSTRUCTION NO. TWO"

"The court instructs the jury if you believe from the evidence that defendant Kansas City as a municipal corporation made and entered into a business arrangement with others for the financial mutual benefit of the City and others whereby said circus was to make use of said auditorium and put on said circus or show to the public therein by paid admissions and defendant undertook to maintain the ramp where plaintiff allegedly fell in a reasonably safe condition for the use of the public and plaintiff and paid customers attending such show and that on the occasion described in evidence plaintiff Mrs. McGrury and her family attended said show and paid for their admission thereto, and that at the end of said show plaintiff was walking down and making ordinary use of said ramp with a crowd of other such customers toward the street, and that she then and

there suddenly and unexpectedly slipped on the walking surface of said ramp and was thereby injured, if you so find, and that up to the time of her alleged fall she was unaware of any danger thereat and at all times herself used ordinary care, if you so find, and if you find that said surface of said ramp was then and there strewn with and had on it an accumulation of mashed, trampled and greasy popcorn that made said surface of said ramp at said time and place dangerous and not reasonably safe for ordinary use and that such customers making ordinary use thereof were reasonably likely to ship thereon and be injured, if you so find, and if you find that defendant knew or by the use of ordinary care would have timely known of all the abovesubmitted facts, and if you find them to be the facts, and long enough before she fell, if so, by the use of ordinary care to have removed and remedied said dangers, if any, or timely warned her thereof and thereby prevented her being injured, if so, and if you find defendant failed to use ordinary care so to do and that thereby and in maintaining same in the aforesubmitted condition, if so, defendant was negligent, and if you find that she so fell and was injured as a direct result of the abovesubmitted negligence of defendant, then your verdict must be for plaintiff Mrs. McGrury."

The criticism levelled at it is based on highly technical grounds and, in our opinion, not justified. We think it would serve no useful purpose, nor add to the usable body of the law, to discuss same in detail. The instruction is not prejudicially erroreous on any grounds suggested.

■ Defendant claims error in the giving of instruction No. 7. In its motion for new trial the specification of error set out was as follows: " * * * that it improperly submitted the burden of proof of contributory negligence * * *". This constitutes a general objection only, not a specification such as is contemplated by the rules. Hunt v. Hunt (Mo.App.), 387 S.W. 2d 234, 236. Whether or not the instruction is prejudicially erroneous is not preserved for review. Rules 70.02, 70.21, and 79.03; Arnold v. Fisher (Mo.App.), 359 S. W.2d 602, 609–611; Miller v. Gulf, Mobile and Ohio Railroad Company (Mo.), 386 S. W2d 97, 104.

■ It is contended that the verdict is excessive by $5000.00. The question is: Is the amount of the verdict such as to shock the conscience of the Court?

We have heretofore set out the facts regarding the nature and extent of plaintiff's injuries. Dr. McCullough, the surgeon who operated, confirmed what we said the evidence showed. He said that her injuries are of a permanent character. He based that opinion on a physical examination that he made just prior to the date of the trial, more than three years after the injuries were suffered.

Plaintiff was sixty-one years of age in March, 1961. At the time of the trial, September, 1964, her life expectancy was eighteen years. She is partially and permanently disabled so as to be unable to perform the ordinary duties of a home maker, and requires hired assistance in addition to what services plaintiff's husband can perform. Her condition will not likely improve. The jurors could have so found the above facts, and they could have believed, from their general observation and experience in life, that her disability would likely increase with the passage of years. The jury is the real authority for determining the amount of damages to be awarded in this kind of case, and the trial judge has, in effect, approved. We cannot say that $10,000.00 is clearly excessive. Stafford v. Fred Wolferman, Inc., supra, 307 S.W.2d 478.

The judgment is affirmed.

MAUGHMER, C., and BROADDUS, Special Commissioner, concur.

PER CURIAM.

The foregoing opinion of SPERRY, C., is adopted as the opinion of the court.

CROSS, P. J., and HOWARD, J., concur.

BLAIR, J., not participating.